# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AHMET ACIK, on behalf of himself and all others similarly situated, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | |
| | **Civil Action No. 07-cv-881** |
| v. | |
| | **Judge Gottschall** |
| I.C. SYSTEM, INC. | |
| | **Magistrate Judge Keys** |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.   Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.   The "Unsophisticated Consumer" Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     C.   The FDCPA is a Strict Liability Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     D.   Preliminary Statutory Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     E.   Defendant has violated the FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          1.   Violations of 15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

               a.   Sections 1692e and e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                    i.    Defendant Failed to Communicate Information
                          About the Amount of the Debt . . . . . . . . . . . . . . . . . . . . . . 9

                    ii.   Defendant's Varying Status of "Additional Charges"
                          Would Confuse the Unsophisticated Consumer . . . . . . . . 13

                    iii.  Defendant Failed to Disclose that it was Attempting to
                          Collect Two Categories of Interest . . . . . . . . . . . . . . . . . . 13

               b.   Section 1692e(2)(A)–amount of the debt . . . . . . . . . . . . . . . . . . . 14

               c.   Section 1692e(2)(A)–character of the debt . . . . . . . . . . . . . . . . . 14

          2.   Violations of 15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          3.   Violations of 15 U.S.C. § 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Cases**

Acik v. I.C. System, Inc., 251 F.R.D. 332 (N.D.Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-7

Altergott v. Modern Collection Techniques, 1994 U.S.Dist.LEXIS 8484 (N.D.Ill. 1994) . . . . . . . 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . 4-5

Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Baker v. G.C. Services Corp., 677 F.2d 775 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Bankr. Estate of Bull v. Asset Acceptance, LLC, 444 F.Supp.2d 946 (N.D.Ind. 2006) . . . . . . . . . 17

Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 19

Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997) . . . . . . . . . 6

Black Agents & Borkers Agency, Inc. v. Near North Insurance Brokerage, Inc.,
    409 F.3d 833 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Blair v. Sherman Acquisition, 2004 U.S. Dist. LEXIS 25106 (N.D.Ill. 2004) . . . . . . . . . . . . . . . 6

Boatley v. Diem Corp., 2004 U.S.Dist.LEXIS 5089 (D.Ariz. 2004) . . . . . . . . . . . . . . . . . . . . . . . 17

Chuway v. National Action Financial Services, Inc., 362 F.3d 944 (7th Cir. 2004) . . . . . . . . . . . 7

Cisneros v. Neuheisel Law Firm, P.C., 2008 U.S.Dist.LEXIS 1019 (D.Ariz. 2008) . . . . . . . . . . . 17

Collins v. Sparacio, 2004 U.S.Dist.LEXIS 4362 (N.D.Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 17

Dougherty v. Wells Fargo Home Loans, Inc., 425 F.Supp.2d 599 (E.D.Pa. 2006) . . . . . . . . . 11, 12

Dowdy v. Solutia Healthcare TAS, Inc., 2006 U.S.Dist.LEXIS 88899 (M.D.Tenn. 2006) . . . . 11-12

Durkin v. Equifax Check Services, Inc., 406 F.3d 410 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . 5, 7

Fields v. Wilber Law Firm, P.C., 383 F.3d 562 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . *passim*

Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 7

Gonzalez v. Codilis & Assocs., P.C., 2004 U.S.Dist.LEXIS 5463 (N.D.Ill. 2004) . . . . . . . . . . . . 17

Gonzalez v. Lawent, 2005 U.S.Dist.LEXIS 9504 (N.D.Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hayden v. Rapid Collection Systems, Inc., 2006 WL 1127180 (D.Ariz. 2006) . . . . . . . . . . . . . . 15

Horkey v. J.V.D.B. & Associates, Inc., 333 F.3d 769 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 7

Irwin v. Mascott, 96 F.Supp.2d 968 (N.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

James v. Olympus Servicing, L.P., 2003 U.S.Dist.LEXIS 7468 (N.D.Ill. 2003) . . . . . . . . . . . . . . 17

Johnson v. Ashcroft, 286 F.3d 696 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 6

Johnson v. Riddle, 305 F.3d 1107 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kiliszek v. Nelson, Watson & Associates, LLC, 2006 WL 335788 (M.D.Pa. 2006) . . . . . . . . . . 17

Kirscher v. Messerli & Kramer, P.A., 2006 U.S.Dist.LEXIS 3346 (D.Minn. 2006) . . . . . . . . . . . 17

Lamb v. Javitch, Block & Rathbone, LLP, 2005 U.S.Dist.LEXIS 42785 (S.D.Ohio 2005) . . . . . . 17

Lockett v. Freedman, 2004 U.S.Dist.LEXIS 6857 (N.D.Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 17

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 547, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

McCabe v. Crawford & Co., 210 F.R.D. 631 (N.D.Ill. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McCabe v. Crawford & Co., 272 F.Supp.2d 736 (N.D.Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

McMillan v. Collection Professionals, Inc., 455 F.3d 754 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . 5

Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,
    214 F.3d 872 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18-20

Oliphant v. Simboski, 2005 U.S.Dist.LEXIS 5353 (D.Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 17

Olson v. Schultz, 366 F.3d 509 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Padilla v. Payco Gen. Am. Credits, Inc., 161 F.Supp.2d 264 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . 17

Pollice v. National Tax Funding, L.P., 225 F.3d 379 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 15

Porter v. Fairbanks Capital Corp., 2003 WL 21210115 (N.D.Ill. 2003) . . . . . . . . . . . . . . . 11, 12, 17

Randolph v. IMBS, Inc., 368 F.3d 726 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

Richard v. Oak Tree Group, Inc., 2008 U.S.Dist.LEXIS 10369 (W.D.Mich. 2008) . . . . . . . . . 12, 14

Ross v. Commercial Fin. Servs., Inc., 31 F. Supp. 2d 1077 (N.D.Ill. 1999) . . . . . . . . . . . . . . . . . 6

Singer v. Pierce & Assocs., P.C., 383 F.3d 596 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Stolicker v. Muller, Muller, Richmond, Harms, Myer,
    2005 U.S.Dist.LEXIS 32404 (W.D.Mich. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Thomson v. Prof'l Foreclosure Corp., 2000 U.S.Dist.LEXIS 22564 (E.D.Wash. 2000) . . . . . . . . 17

Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 7, 15

Tuttle v. Equifax Check Servs., 190 F.3d 9 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Veach v. Sheeks, 316 F.3d 690 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wahl v. Midland Credit Management, Inc., 2008 U.S.Dist.LEXIS 2563 (N.D.Ill. 2008) . . . . . 11, 12

West v. Costen, 558 F.Supp. 564 (W.D.Va. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wilson v. Collecto, Inc., 2004 WL 432509 (N.D.Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Zaborac v. Phillips and Cohen Associaites, Ltd., 330 F.Supp.2d 962 (N.D.Ill. 2004) . . . . . . . . . 5

**Statutes & Rules**

15 U.S.C. § 1692(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1692(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

15 U.S.C. § 1692(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 1692a(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

15 U.S.C. § 1692a(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 1692a(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 1692e(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 1692g(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed.R.Civ.P. 56(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Local Rule 56.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Rule 56.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Rule 56.1(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pursuant to Local Rule 56.1(a)(2), Plaintiff Ahmet Acik files this Memorandum in Support of his Motion for Partial Summary Judgment.

## I.      PROCEDURAL HISTORY

Plaintiff filed this class action on February 15, 2007, against Defendant I.C. System, Inc. Docket # 1. Discovery closed January 11, 2008. Docket # 37. On June 11, 2008, this Court granted Plaintiff's Motion for Class Certification. Docket # 39, 40. <u>Acik v. I.C. System, Inc.</u>, 251 F.R.D. 332 (N.D.Ill. 2008).

## II.      STATEMENT OF FACTS

Plaintiff Ahmet Acik is an Illinois resident and consumer residing in Plainfield, Illinois. <u>See</u> Plaintiff's Statement of Material Facts # 1 (hereinafter "PSMF # __"); <u>Appendix 1</u>,[1] ¶ 3.

On January 20, 2006, Mr. Acik was injured. PSMF # 2; <u>Appendix 2</u>, 13:10 - 14:2. Due to the injury, Mr. Acik was provided medical treatment and/or services by Chicagoland Plastic Surgery, Ltd. and/or Dr. Rigoberto Mendoza from January through April 2006. PSMF # 3; <u>Appendix 1</u>, ¶ 9. Due to the medical treatment and/or services provided Mr. Acik, he incurred a debt to Chicagoland Plastic Surgery, Ltd. and/or Dr. Rigoberto Mendoza in the amount of $200.00. PSMF # 4; <u>Appendix 1</u>, ¶ 9. The principal amount of Mr. Acik's alleged debt was $200.00 ("hereinafter referred to as "the Debt"). PSMF # 5; <u>Appendix 4</u>, p. 4 ¶ 7. The principal amount of Mr. Acik's alleged debt was incurred as a result of office visits on February 9, 2006, and March 2, 2006, with Chicagoland Plastic Surgery, Ltd. PSMF # 6; <u>Appendix 4</u>, p. 4 ¶ 6. The Debt was incurred for personal, family, or household purposes, *i.e.*, for medical treatment and/or services. PSMF # 7, <u>Appendix 4</u>, p. 4, ¶ 11. The charges for which Mr. Acik's debt was comprised were due prior to the date Defendant I.C. System, Inc. obtained the debt. PSMF # 8; <u>Appendix 1</u>, ¶ 9.

On January 26, 2006, Mr. Acik signed a "Chicagoland Plastic Surgery, LTD. Patient Registration Form". PSMF # 9; <u>Appendix 2</u>, 17:12 - 19:22; <u>Appendix 3</u>. The "Chicagoland Plastic Surgery, LTD. Patient Registration Form" (hereinafter referred to as "The Agreement") is

---

[1]      Pursuant to Judge Gottschall's Standing Order Regarding Motions for Summary Judgment, citations are to both the 56.1(a)(1) Compendium of documents establishing the fact and to the 56.1(a)(3) statement of material facts. Documents are attached to the 56.1(a)(1) Compendium as <u>Appendices</u> and citations are made to those <u>Appendices</u>.

the agreement that created Plaintiff's alleged debt, PSMF # 10; Appendix 4, p. 3 ¶ 1, as well as the alleged debt of each class member who had an alleged debt to Chicagoland Plastic Surgery, Ltd. PSMF # 11; Appendix 4, ¶ 2.[2]

The Agreement states, "Interest of 1.5% per month, up to 9% annually will be charged after 60 days." PSMF # 12; Appendix 3; Appendix 4, p. 4 ¶ 9. The Agreement further states, "I understand that I am responsible for all costs and fees, including any attorney fees, and interest incurred from the date of my initial consultation with any physician at Chicagoland Plastic Surgery, LTD." PSMF # 13; Appendix 3.

Dr. Rigoberto Mendoza's billing agency is Pro Medical Billing. PSMF # 14; Appendix 1, ¶ 10. Defendant obtained Mr. Acik's alleged debt from Pro Medical Billing on June 26, 2006. PSMF # 15; Appendix 1, ¶ 11; Appendix 4, p. 11 ¶ 15.

At all times relevant, Defendant I.C. System, Inc. was a corporation and collection agency located in Saint Paul, Minnesota. PSMF # 16; Appendix 1, ¶ 4. Defendant was engaged in the collection of debts form Illinois consumers using the mail and telephone. PSMF # 17; Appendix 1, ¶ 5. Defendant regularly attempts to collect consumer debts alleged to be due another. PSMF # 18; Appendix 1, ¶ 6. Defendant sends more than 500,000 collection letters per month. PSMF # 19; Appendix 6, 34:1-9. Defendant was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). PSMF # 20; Appendix 1, ¶ 7.

On June 27, 2006, Defendant sent a letter to Plaintiff in an attempt to collect the Debt. PSMF # 21; Appendix 1, ¶ 12. A copy of Defendant's June 27, 2006, letter to Plaintiff is attached to his Class Action Complaint as Exhibit A and his LR 56.1(a)(1) Compendium as Appendix 5 (hereinafter referred to as "Exhibit A"). PSMF # 22; Appendix 1, ¶ 12. Exhibit A was the initial communication from Defendant to Mr. Acik regarding the Debt. PSMF # 23; Appendix 1, ¶ 22. Defendant sent no correspondence to Mr. Acik within five days of sending Exhibit A. PSMF # 24; Appendix 1, ¶ 23.

Exhibit A contains:

RE:    Pro Medical Billing

---

[2]      Within Plaintiff's Requests for Admission # 1 & 2, which Defendant admits, "Exhibit 2" refers to the Chicagoland Plastic Surgery, LTD. Patient Registration Form" (attached as Appendix 3 to Plaintiff's LR 56.1(a)(1) Compendium of Documents).

30 N Michiagn Ave Ste 1111
Chicago IL 60602-3743

| | |
|---|---|
| Principal: | $200.00 |
| Additional Client Charges: | $78.50 |
| Amount Placed For Collection: | $278.50 |
| BALANCE DUE: | $278.50 |

PSMF # 25; Appendix 1, ¶ 13. Exhibit A states:

> Dear Ahmet Acik:
>
> Your delinquent account has been turned over to this collection agency. The amount reflected above is the amount you owe as of the date of this letter. This amount may change due to interest or charges added to the account after the date of this letter.

PSMF # 26; Appendix 1, ¶ 14. The $78.50 "Additional Client Charges" contained in Exhibit A is the aggregate of $18.50 interest and a $60.00 collection fee. PSMF # 27; Appendix 1, ¶ 15. Exhibit A does not itemize the "Additional Client Charges". PSMF # 28; Appendix 1, ¶ 16. Exhibit A does not specify the amount of the collection fee, nor disclose that Defendant is attempting to collect a collection fee. PSMF # 29; Appendix 1, ¶ 17. The $18.50 interest contained in Exhibit A is 9.25% of the principal amount of Mr. Acik's debt. PSMF # 30; Appendix 4, p. 4, ¶ 8. Defendant does not know if there is an Illinois statute that permits a collection fee. PSMF # 31; Appendix 9, 28:1-4. There is no Illinois statute that affirmatively permits a collection fee. PSMF # 32.

Exhibit A does not specify the amount of interest Defendant is attempting to collect as of the date of the letter. PSMF # 33; Appendix 1, ¶ 18. Exhibit A does not advise Mr. Acik that if he pays the amount shown, an adjustment may be necessary after Defendant receives his check. PSMF # 34; Appendix 1, ¶ 19. Exhibit A does not advise Mr. Acik that if an adjustment is necessary, Defendant will inform him before depositing the check for collection. PSMF # 35; Appendix 1, ¶ 20. Exhibit A does not advise Mr. Acik, in English, that he should write the undersigned or call a specific telephone number for further information. PSMF # 36; Appendix 4, p. 4, ¶ 10. Exhibit A also states, "There are no additional charges for making your payment online." PSMF # 37; Appendix 5.

All letters in the form of Exhibit A, sent in an attempt to collect an alleged debt to

3

Chicagoland Plastic Surgery, Ltd., included a collection fee of $60.00, PSMF # 38; Appendix 4, p. 5, ¶ 12, and interest. PSMF # 39; Appendix 4, p. 5, ¶ 13.

## III.   QUESTIONS PRESENTED

1.   Did Defendant violate the FDCPA by using any false, deceptive, or misleading representation or means in connection with the collection of any debt in violation of 15 U.S.C. §§ 1692e and e(10)?

2.   Did Defendant violate the FDCPA by falsely representing the character, amount, or legal status of any debt in violation of 15 U.S.C. § 1692e(2)(A)?

3.   Did Defendant violate the FDCPA by using any unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f?

4.   Did Defendant violate the FDCPA by attempting to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the debt nor permitted by law in violation of 15 U.S.C. § 1692f(1)?

5.   Did Defendant violate the FDCPA by falsely stating the amount of the debt in the initial communication in violation of 15 U.S.C. § 1692g(a)(1)?

Plaintiff respectfully suggests that the above five questions should be answered in the affirmative.

## IV.   ARGUMENT

### A.   Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> . . . shall be rendered if the pleadings, the discovery and dicsclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

"An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed.R.Civ.P. 56(d)(2).

The entry of summary judgment is appropriate where there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Substantive law defines which facts are material, and only disputes over facts that might affect the outcome of the case will defeat summary judgment. Id. at 248, 106

4

S.Ct. at 2510. A factual dispute is genuine only if a "reasonable jury could return a verdict for the non-moving party." Id. Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the movant has met his burden of demonstrating the absence of a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevent its entry. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 547, 586-87, 106 S. Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). It is not sufficient for the party opposing summary judgment to provide only a scintilla of evidence supporting its case. Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. See Black Agents & Borkers Agency, Inc. v. Near North Insurance Brokerage, Inc., 409 F.3d 833 (7th Cir. 2005) and Zaborac v. Phillips and Cohen Associaites, Ltd., 330 F.Supp.2d 962, 964 (N.D.Ill. 2004).

There are no disputes of fact regarding Defendant's practices and its collection letters that were sent to Mr. Acik and the class members in an attempt to collect a debt. Because these practices and letters violate the FDCPA, partial summary judgment against Defendant is required.

## B.     The "Unsophisticated Consumer" Standard

The United States Court of Appeals for the Seventh Circuit has established the standard by which violations of the FDCPA are analyzed, *i.e.* from the view of the "unsophisticated consumer." Avila v. Rubin, 84 F.3d 222, 226-27 (7th Cir. 1996) ("the standard is low, close to the bottom of the sophistication meter"). The unsophisticated consumer standard "assumes that the debtor is uninformed, naive, or trusting." Veach v. Sheeks, 316 F.3d 690, 692 (7th Cir. 1992). This objective analysis applies to inquiries under Sections 1692e, f, and g. McMillan v. Collection Professionals, Inc., 455 F.3d 754, 759 (7th Cir. 2006).

When an FDCPA violation is so "clearly" evident on the face of the collection letter, a court may award summary judgment to the FDCPA plaintiff. Durkin v. Equifax Check Services, Inc., 406 F.3d 410, 415 (7th Cir. 2005) citing Avila, 84 F.3d at 226-27.

The United States Congress, in enacting the FDCPA, found that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Further, Congress found that "means other than misrepresentation or other abusive debt collection practices are available for

the effective collection of debts." 15 U.S.C. § 1692(c). "It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt. 15 U.S.C. §§ 1692d, 1692e, and 1692f. The FDCPA also requires the debt collector to provide the consumer with notice of his or her rights under the Act. 15 U.S.C. §1692g. The Seventh Circuit has stated, "A basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable manner." Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997) (internal quotations omitted).

"A court must inquire whether the letter is confusing." Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1060 (7th Cir. 1999)."[T]he unsophisticated consumer is to be protected against confusion, whatever form it takes." Bartlett v. Heibl, 128 F.3d 497, 500 (7th Cir. 1997). Because the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer. Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002). See also Blair v. Sherman Acquisition, 2004 U.S. Dist. LEXIS 25106, *6 (N.D.Ill. 2004); Ross v. Commercial Fin. Servs., Inc., 31 F. Supp. 2d 1077, 1079 (N.D.Ill. 1999).

Your Honor stated, in certifying the class in this case,

> it is irrelevant whether [the plaintiff] was personally confused or
> misled by [the debt collector]'s letter, or whether he knew he did
> not owe the debt in question; alleged FDCPA violations are subject
> to an objective unsophisticated-consumer standard. Gammon v.
> GC Services Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994);
> Ramierz v. Palisades Collection LLC, No. 07 C 3840, 2007
> U.S.Dist.LEXIS 95972, 2007 WL 4335293, at *6 (N.D.Ill. Dec. 5,
> 2007). Thus the court will look to whether an unsophisticated
> consumer, i.e., one who is uninformed, naive, or trusting, would
> have been confused about the portions of the collection letter that

6

allegedly violate the FDCPA.

Acik v. I.C. System, Inc., 251 F.R.D. 332, 336 (N.D.Ill. 2008). See also  Wilson v. Collecto, Inc., 2004 WL 432509, *5 (N.D.Ill. 2004) ("Violations of the FDCPA are determined by applying the 'unsophisticated consumer' standard to the letters at issue. Accordingly, such analysis 'is not dependent upon actual reliance by the plaintiff.").

"The Act regulates the debt collection tactics employed against personal borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods." Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 875 (7th Cir. 2000). Thus, in evaluating claims for violations of the FDCPA, the Court must view the defendant's conduct through the eyes of the unsophisticated consumer. Olson v. Schultz, 366 F.3d 509, 512 (7th Cir. 2004); Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 564 (7th Cir. 2004); Durkin, 406 F.3d at 415; Chuway v. National Action Financial Services, Inc., 362 F.3d 944, 949 (7th Cir. 2004); Horkey v. J.V.D.B. & Associates, Inc., 333 F.3d 769, 773 (7th Cir. 2003).

### C.        The FDCPA is a Strict Liability Statute

The FDCPA is a strict liability statute. Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2000); McCabe v. Crawford & Company, 272 F.Supp.2d 736, 743 (N.D.Ill. 2003). The test for determining liability under the FDCPA revolves around the conduct of the debt collector, not the consumer. Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003). "[O]ur test for determining whether a debt collector violated 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable consumer." Id. The debt collector's subjective intent or belief is not dispositive to the Court's inquiries under 1692e. Id.

"The FDCPA is a strict liability statute and proof of one violation is sufficient to support summary judgment for the plaintiff." Gonzalez v. Lawent, 2005 U.S.Dist.LEXIS 9504, *13 (N.D.Ill. 2005); Altergott v. Modern Collection Techniques, 1994 U.S.Dist.LEXIS 8484, *9 (N.D.Ill. 1994).

### D.        Preliminary Statutory Requirements

Plaintiff Ahmet Acik is a consumer because he is a natural person who was obligated or

allegedly obligated to pay a debt. 15 U.S.C. § 1692a(3). The term 'debt' means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §1692a(5). Here, the relevant debt was incurred by Mr. Acik for personal, family, or household purposes, *i.e.*, for medical services and/or treatment. PSMF # 7, <u>Appendix 4</u>, p. 4, ¶ 11.

Defendant has admitted that it is a debt collector. PSMF # 20; <u>Appendix 1</u>, ¶ 7. It was engaged in the collection of debts from consumers using the mail and telephone and it regularly attempted to collect consumer debts alleged to be due another. PSMF # 17 & 18; <u>Appendix 1</u>, ¶ 5; <u>Appendix 1</u>, ¶ 6. Defendant sends more than 500,000 collection letters per month. PSMF # 19; <u>Appendix 6</u>, 34:1-9. Therefore, Defendant is a debt collector. 15 U.S.C. § 1692a(6).

Finally, to recover actual damages on behalf of the class, Mr. Acik is not required to have suffered actual damages. <u>Keele v. Wexler</u>, 149 F.3d 589, 593 (7th Cir. 1998).

### E.    **Defendant has violated the FDCPA**

Defendant's letter (<u>Exhibit A/Appendix 3</u>) violates the FDCPA by:

(i)     using any false, deceptive, or misleading representation or means in connection with the collection of any debt in violation of 15 U.S.C. §§ 1692e and e(10);

(ii)    falsely representing the character, amount, or legal status of any debt in violation of 15 U.S.C. § 1692e(2)(A);

(iii)   using any unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f;

(iv)    attempting to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the debt nor permitted by law in violation of 15 U.S.C. § 1692f(1); and

(v)     failing to state the amount of the debt in the initial communication in violation of 15 U.S.C. § 1692g(a)(1).

### 1.    **Violations of 15 U.S.C. § 1692e**

Defendant has violated Sections 1692e, e(2)(A), and e(10) of the FDCPA. Sections 1692e and e(10) prohibit using any false, deceptive, or misleading representation or means in

connection with the collection of any debt. Section 1692e(2)(A) prohibits falsely representing the character, amount, or legal status of any debt.

      **a.**      **Sections 1692e and e(10)**

            **i.**      **Defendant Failed to Communicate Information About the Amount of the Debt**

"[D]ebt collectors must ... clearly and fairly communicate information about the amount of the debt to debtors." Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004).

In Appendix 5, Defendant attempted to collect "Additional Client Charges" in the amount of $78.50. PSMF # 25; Appendix 1, ¶ 13. Defendant sent Appendix 5 five months after Mr. Acik incurred the Debt. These "Additional Client Charges" increased the principal amount of the Debt by 39.25% , a staggering increase considering that a mere five months had elapsed (making the increase comparable to an annual increase of 94.2%).

Unbeknownst to Mr. Acik and the class members, Defendant was attempting to collect a $60.00 collection fee and $18.50 in interest.[3] PSMF # 27; Appendix 1, ¶ 15. These amounts were unknown because Defendant chose not to inform Mr. Acik and the class members that it was attempting to collect both a collection fee and interest. Instead, Defendant invented the opaque category "Additional Client Charges", blinding Mr. Acik and the class members from the source and nature of those additional charges.[4]

The Seventh Circuit encountered an almost identical situation in Fields. The attorney-debt collector attempted to collect an amount in addition to the principal amount of the debt. Fields, 383 F.3d at 563. The Seventh Circuit stated that even if the amount in addition to the principal

---

[3]     All letters sent to the class members included an undisclosed collection fee of $60.00, PSMF # 38; Appendix 4, p. 5, ¶ 12, and an amount of interest. PSMF # 39; Appendix 4, p. 5, ¶ 13.

[4]     In order to avoid confusion later in this brief and subsequent briefs filed by both parties, a note must be made regarding the two categories of interest Defendant attempted to collect. Defendant attempted to collect two categories of interest: "INT CHG AT" and "ACC INT AMT". PSMF # 41; Appendix 7; Appendix 6, 111:18 - 112:19. "INT CHG AT" means "Amount of interest being charged." PSMF # 42; Appendix 8. Exhibit A contains an $18.50 interest charge that falls under the category "INT CHG AT", which charge would not change, and was provided by Pro Medical Billing. PSMF # 43; Appendix 1, ¶ 15; Appendix 6, 111:18 - 112:16. "ACC INT AMT" means "The amount of interest that has accrued on the debt." PSMF # 44; Appendix 8. Exhibit A does not contain any amount that falls under the category "ACC INT AMT". PSMF # 45; Appendix 6, 111:18 - 112:19. However, interest continued to accrue under this category.

were authorized by contract, the debt collector "must still clearly and fairly communicate information bout the amount of the debt to debtors", Id. at 565, and held that the communication "could conceivably mislead an unsophisticated consumer." Id. at 566.

The Seventh Circuit explained further,

> Nowhere did Wilber explain that it was seeking attorneys' fees of $ 250. Fields received the initial dunning letter almost eight months after she incurred the charges at the veterinary hospital.
>
> An unsophisticated consumer could reasonably wonder why her bill was now $ 388.54, even assuming she had saved the original contract that specified she could be charged for attorneys' fees. It would be difficult for such a consumer to understand how a relatively modest fee for services rendered had tripled in size. *Cf. Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1060 (7th Cir. 1999)* ("Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade.").
>
> Or, an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely. In this circumstance, the debtor (or the debtor's spouse, or someone else paying bills for the debtor) might logically assume that she simply incurred nearly $ 400 in charges. By leaving the door open for this assumption to be made, Wilber's letter was misleading because it gave a false impression of the character of the debt. <u>It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt. One simple way to comply with *§ 1692e* and *§ 1692f* in this regard would be to itemize the various charges that comprise the total amount of the debt.</u>
>
> The district court agreed that the dunning letter in this case was facially misleading. But we are forced to disagree with the district court's determination that the letters' misleading nature was irrelevant as a matter of law because Fields could reference the contract from Kruger Animal Hospital or because she could telephone Wilber and ask for an explanation.
>
> As we noted above, even if she saved her contract from nearly eight months earlier, the unsophisticated consumer would not necessarily understand that Wilber was seeking $ 250 in attorneys' fees, an amount allowed, but not specified, by the contract.

Id. at 566 (emphasis added). When the Seventh Circuit was faced with a situation where the debt

collector chose to itemize the amounts comprising the debt, it stated, "And unlike the debt collector in _Fields_, Saxon segregated the attorneys' fees from the underlying debt in an itemized list of expenses, thus avoiding a § 1692e or § 1692f violation." Singer v. Pierce & Assocs., P.C., 383 F.3d 596, 598 (7th Cir. 2004).

Judge Castillo of this District interpreted Fields as involving "a misleading collection letter that failed to explain to the consumer that the total amount due included attorneys fees." Wahl v. Midland Credit Management, Inc., 2008 U.S.Dist.LEXIS 2563, *9 fn2 (N.D.Ill. 2008). Here, Defendant's letter failed to explain to the consumer that the total amount due included a collection fee and an interest charge.

Defendant may argue that Fields is not controlling because in this case the collection fee and interest were separated from the principal. However, this is a distinction without a difference. The Eastern District of Pennsylvania rejected this argument, citing Fields approvingly and finding confusion and deception:

> In the case at bar, Defendant did itemize the charges to Plaintiff, although the attorney's fees and costs at issue were not identified as such. Instead, they were listed as "recoverable corporate advances." Describing the contested fees as "recoverable corporate advances" may be confusing and deceptive to an unsophisticated consumer.

Dougherty v. Wells Fargo Home Loans, Inc., 425 F.Supp.2d 599, 608 (E.D.Pa. 2006). See also Porter v. Fairbanks Capital Corp., 2003 WL 21210115, *5 (N.D.Ill. 2003). In this case, Defendant did separate the collection fee and interest into a separate line item; however, it combined them and disguised their character with the vague label, "additional client charges."

The Northern District of Tennessee encountered a similar situation in which the debt collector provided a statement that included some itemization, but did not accurately disclose the character of the amounts comprising the debt. The Court stated, "the itemization did not identify the sources for the $10,781.06 total despite the form letter's spaces to illustrate how a particular balance was calculated. Applying _Fields_, the Court concludes that Solutia's failures to reflect clearly the addition of collection costs to the principal balance violates 15 U.S.C. §§ 1692e and 1692f." Dowdy v. Solutia Healthcare TAS, Inc., 2006 U.S.Dist.LEXIS 88899, *25 (M.D.Tenn. 2006). Almost identical to Dowdy, in the instant case Defendant "included some itemization, but

11

did not accurately disclose the character of the amounts comprising the debt." Id. Instead of labeling the collection fee and interest charge as what they actually were, Defendant combined them and cloaked them behind an inconspicuous label.

Fields, Wahl, Dougherty, Porter, Dowdy, and Richard (infra) all support Plaintiff's argument. Instead of "clearly and fairly" communicating to consumers that it was attempting to collect both a collection fee and interest charge, Defendant chose to veil this information and let the unsophisticated consumers remain in the dark wondering what was included in the "additional client charges." As discussed in more depth below at pp. 14-17 with regard to Section 1692f and f(1), the contract with Chicagoland Plastic Surgery did not expressly authorize a $60 collection fee. Additionally, the contract did not expressly authorize the 22% in annual interest ($18.50 added to a $200 principal after only five months) added to the principal; indeed, it expressly capped monthly interest at 1.5% and annual interest at 9% to be charged only after 60 days. PSMF # 12. These facts make Defendant's hidden charges even more egregious.

As contemplated by the Seventh Circuit, even if the unsophisticated consumer had saved the contract with Chicagoland Plastic Surgery, he or she would not necessarily understand that Defendant was seeking $60 for a collection fee or $18.50 in interest.

Defendant may argue that Fields does not apply here because the creditor added the collection fee and interest and requested Defendant to collect them, as opposed to Defendant adding these amounts itself. However, Fields and the other decisions cited above make clear that the Seventh Circuit and several other Courts requires a debt to be communicated clearly and fairly, regardless of the source of the additional amounts.

Moreover, Defendant's own records contain itemized debt information. Indeed, the second page of Defendant's computer file regarding Mr. Acik specifically itemizes the $200.00 Principal Amount, $60.00 Collection Charge, and $18.50 Interest Charge. PSMF # 40; Appendix 7 ("PRI AMT"/"CLTN CHG"/"INT CHG AT"). However, even though this information was provided to Defendant in itemized form and Defendant retained the information in itemized form, it chose to withhold this useful and necessary information. Intentionally withholding the nature of the additional charges, i.e., collection fee and interest, results in the debt being communicated such that its true character is impossible to be determined, even by someone "capable of making basic logical deductions and inferences." Fields, 383 F.3d at 564. This is

12

especially true in a case such as this, where Mr. Acik and the class members never even agreed to pay a collection fee, nor interest at the rate used here. See infra at pp. 14-17.

Defendant's failure to fairly and accurately communicate the Debt to Mr. Acik and class members requires a finding that Defendant violated 15 U.S.C. § 1692e and e(10). Fields, 383 F.3d at 566.

### ii. Defendant's Varying Status of "Additional Charges" Would Confuse the Unsophisticated Consumer

Further convoluting the unknown meaning of the needlessly condensed line item "Additional Client Charges", Defendant references "additional charges" again later in the letter. Indeed, after telling Mr. Acik and the class members that they may pay online, Defendant states, "There are no additional charges for making your payment online." PSMF # 37; Appendix 5. The unsophisticated consumers would think that if they pay online, then they do not have to pay the other "Additional Charges" referenced above in the letter (albeit including the word "client" in the category name). Defendant chose language in its communication to consumers that is fraught with confusion. This problem, as well as the itemization problem discussed above, would have been easily prevented by employing the simple, reasonable, and zero-cost practice of itemizing the collection fee and interest, as required by the Seventh Circuit in Fields. More importantly, any possibility of confusion to the unsophisticated consumer would be avoided. Instead, Defendant chose to hide the truth, veiling its charges in an aggregate and ill-defined line item, and further confused the matter by implying that those charges may not have to be paid.

### iii. Defendant Failed to Disclose that it was Attempting to Collect Two Categories of Interest

In line with its need to withhold information from them, Defendant further deceived consumers by attempting to collect two types of interest without clearly informing the consumers. Indeed, it attempted to collect the $18.50 interest charge (included in the "Additional Client Charges"), as well as continuously accruing interest, as contemplated by Defendant's reference to the changing amount of the debt. See supra at p. 9, fn 4; PSMF # 46; Appendix 7. Defendant's decision to attempt to collect two categories of interest without fairly advising consumers of that fact is a deceptive practice in violation of Section 1692e.

Defendant's form communication to Mr. Acik and the class members, represented by

Exhibit A, violates Section 1692e and e(10).

### b. Section 1692e(2)(A)–amount of the debt

"[Section] 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period." Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004).

Defendant falsely represented the amount of Plaintiff's debt by attempting to collect additional charges in violation of Section 1692f(1), discussed *infra* at pages 14-17. Instead of merely collecting the principal amount of the Debt, they attempted to collect "Additional Client Charges", consisting of a $60 collection fee and $18.50 in interest.

Neither the $60 collection fee, nor the $18.50 interest charge were expressly authorized by the agreement creating the debt, nor permitted by law. See infra at pp. 14-17. Therefore, by including these amounts in the Debt, Defendant misrepresented the amount of the debt.

### c. Section 1692e(2)(A)–character of the debt

As discussed above at pp. 9-13, Defendant falsely represented the character of the debt by failing to fairly and clearly communicate the amount of the debt. Fields, 383 F.3d at 566 ("By leaving the door open for this assumption to be made [regarding the actual amount of debt incurred by the consumer], Wilber's letter was misleading because it gave a false impression of the character of the debt."). In Richard v. Oak Tree Group, Inc., 2008 U.S.Dist.LEXIS 10369 (W.D.Mich. 2008), the Western District of Michigan followed Fields and stated, "Defendant provided no explanation for this dramatic increase in plaintiffs' balance. Defendant's failure to account for this additional amount would mislead an unsophisticated consumer. Even a sophisticated consumer would find it difficult to verify or dispute this debt, which included both interest and collection costs." Id. at *18. The Court found a violation of Section 1692e(2). Id.

By failing to reveal that it was attempting to collect a $60 collection fee and $18.50 in interest, veiling it under "additional client charges", Defendant misrepresented the character of the Debt in violation of Section 1692e(2)(A).

### 2. Violations of 15 U.S.C. § 1692f

Defendant has violated Sections 1692f and f(1) of the FDCPA. Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt" and incorporates eight subsections including f(1). Section 1692f(1) prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)

14

unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

The Second Circuit has interpreted Section 1692f(1) to mean:

> *If state law expressly permits service charges,* a service charge may be imposed even if the contract is silent on the matter;
> *If state law expressly prohibits service charges,* a service charge cannot be imposed even if the contract allows it;
> *If state law neither affirmatively permits nor expressly prohibits service charges,* a service charge can be imposed only if the customer expressly agrees to it in the contract.

Tuttle v. Equifax Check Servs., 190 F.3d 9, 13 (2d Cir. 1999) (emphasis in original).

"Simply stated, 'permitted by law' is different from 'not prohibited by law.' Permission requires an affirmative authorization, not just indulgent silence. So the fact that Virginia does not expressly prohibit such charges does not mean that state law permits them in the absence of an agreement providing for such; rather, it means the contrary." West v. Costen, 558 F.Supp. 564, 582 (W.D.Va. 1983). "The burden of proving a statutory exception falls on the party seeking to reap the benefits of the exception." Irwin v. Mascott, 96 F.Supp.2d 968, 980 (N.D.Cal. 1999). Therefore, Defendant maintains the burden of proving that the additional amounts fall into one of the exceptions contains in Section 1692f(1).

"The weight of authority, including an opinion from one of our sister circuits, applies an objective test to determine liability under § 1692f. The test does not hinge on the defendant's knowledge, but rather upon how a consumer would perceive the demand letter." Turner, 330 F.3d at 996. "Contrary to the district court's view, knowledge of the mistake is not a prerequisite to liability under § 1692f. Both §§ 1692f(1) and (2) presume liability." Id. "[A] collector who collected a charge unauthorized by the debt agreement or by law, even by accident, would violate § 1692f(1)." Id.

In determining whether the additional amounts were "expressly authorized", the underlying agreement should be construed in a light most favorable to Plaintiff. Hayden v. Rapid Collection Systems, Inc., 2006 WL 1127180, *2 (D.Ariz. 2006). "[W]e believe the term 'expressly authorized by the agreement creating the debt' requires some actual knowledge or consent by the consumer." Pollice v. National Tax Funding, L.P., 225 F.3d 379, 408 (3d Cir. 2000). Interpreting the word "express", the Third Circuit stated,

> We thus turn for guidance to the common definition of "express" as "explicit," in contrast to implicit or inferred. Black's Law Dictionary, for instance, defines "express" as "clear; definite; explicit; plain . . . . Made known distinctly and explicitly, and not left to inference." BLACK'S LAW DICTIONARY 580 (6th ed. 1990). Other dictionaries give substantially similar definitions. See, e.g., WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 803 (1993) (defining "express" as "directly and distinctly stated or expressed rather than implied or left to inference . . . definite, clear, explicit, unmistakable").

Johnson v. Ashcroft, 286 F.3d 696, 702 (3d Cir. 2002) (emphasis added). Therefore, for an additional amount to be expressly authorized, it must be distinctly and explicitly authorized. It must not be implicitly authorized, nor merely left to inference. Indeed, it must be "definite, clear, explicit, [and] unmistakable." Id.

In this case, the agreement that created the debt (Appendix 3) did not expressly authorize the $60.00 collection fee, nor the $18.50 interest charge.[5] Nowhere does Appendix 3 state that Mr. Acik will be responsible for a collection fee. Instead, it references the ambiguous and vague category "fees." Indeed, even the creditor found the meaning of "fees" to be so inherently uncertain that it chose to further define "fees" as "including any attorney fees" to ensure that Mr. Acik and the class members knew attorney fees were included. Conspicuously absent from Appendix 3 is any reference to a "collection fee", "collection charge" or any other phrase that would expressly authorize the collection fee Defendant attempted to collect.

The possibility of a collection fee was not made known to Mr. Acik and the class members because it was not "distinct[], ... definite, clearly, explicit, unmistakable." The collection fee was not authorized by Appendix 3. To hold otherwise, this Court must first ignore

---

[5]    Despite the FDCPA's unequivocal language that the "agreement creating the debt" must expressly authorize any amount incidental to the principal obligation, Defendant claims that the source of its authority to collect both the $60.00 collection fee and the $18.50 interest is not the agreement that created Mr. Acik's and the class members' debts, but Defendant's contract with Pro Medical Billing. PSMF # 49; Appendix 4, p. 11, ¶ 14 (referring to p. 8, ¶ 4). Apparently, Defendant believes it can ignore the express requirements of the FDCPA and instead look to its own "authority" for collecting additional amounts.

the definition of 'express'; and second, actively write "collection fee" into <u>Appendix 3</u>.[6,7]
Therefore, by attempting to collect the $60.00 collection fee, Defendant violated Section
1692f(1).

Regarding interest, <u>Appendix 3</u> does expressly authorize interest, but also expressly limits
interest to "up to 9% annually". Contrary to this express limit, Defendant attempted to collect
$18.50 interest on a $200.00 principal. The amount of interest Defendant attempted to collect is
9.25% of the principal, PSMF # 30; <u>Appendix 4</u>, p. 4, ¶ 8, which translates to 22.2% annual
interest. Even after just a five month period of time, Defendant attempted to collect more than the
9% interest authorized by <u>Appendix 3</u>. The $18.50 interest Defendant attempted to collect in
<u>Exhibit A</u> was not expressly authorized by the agreement creating the debt, in violation of
Section 1692f(1).

---

[6]     Employing analyses under Section 1692f(1), Courts routinely require that, for a
collection fee to be "expressly authorized by the agreement," the agreement (not surprisingly) must
expressly refer to collection fees or collection costs. <u>Kiliszek v. Nelson, Watson & Associates, LLC</u>,
2006 WL 335788, *8 (M.D.Pa. 2006) (15% collection fee); <u>Boatley v. Diem Corp.</u>, 2004 U.S.Dist.LEXIS
5089, *15 (D.Ariz. 2004) ("recovery of reasonable attorney's fees and other normal and customer costs
of collection including but not limited to collection agency fees and court costs ... up to 50%"); <u>McCabe
v. Crawford & Co.</u>, 210 F.R.D. 631, 639 (N.D.Ill. 2002) ("renter will also pay all direct costs of
collection, including attorney fees, and interest at the highest rate permitted by law."); <u>Padilla v. Payco
Gen. Am. Credits, Inc.</u>, 161 F.Supp.2d 264, 276 (S.D.N.Y. 2001) (Higher Education Act expressly
authorizes collection fee: 34 C.F.R. § 682.410(b)(2) Collection charges: "...all attorney's fees, *collection
agency charges*..." (emphasis in original).

[7]     In the parallel scenario where debt collectors attempt to collect attorney fees, Courts
routinely require that, for attorney fees to be "expressly authorized by the agreement," the agreement
must expressly refer to attorney fees. <u>Fields v. Wilber Law Firm</u>, 383 F.3d 562, 564 (7th Cir. 2004);
<u>Lockett v. Freedman</u>, 2004 U.S.Dist.LEXIS 6857, *11-16 (N.D.Ill. 2004) ("Lawyers' fees and legal
costs" does not necessarily mean "attorney's fees"); <u>Gonzalez v. Codilis & Assocs., P.C.</u>, 2004
U.S.Dist.LEXIS 5463, *6-8 (N.D.Ill. 2004); <u>Collins v. Sparacio</u>, 2004 U.S.Dist.LEXIS 4362, *5-6, 13-14
(N.D.Ill. 2004); <u>Porter v. Fairbanks Capital Corp.</u>, 2003 WL 21210115, *6 (N.D.Ill. 2003); <u>James v.
Olympus Servicing, L.P.</u>, 2003 U.S.Dist.LEXIS 7468, *5, 9 (N.D.Ill. 2003); <u>Cisneros v. Neuheisel Law
Firm, P.C.</u>, 2008 U.S.Dist.LEXIS 1019, *1, 12 (D.Ariz. 2008); <u>Kirscher v. Messerli & Kramer, P.A.</u>,
2006 U.S.Dist.LEXIS 3346, *15 (D.Minn. 2006); <u>Bankr. Estate of Bull v. Asset Acceptance, LLC</u>, 444
F.Supp.2d 946, 951 (N.D.Ind. 2006); <u>Stolicker v. Muller, Muller, Richmond, Harms, Myer</u>, 2005
U.S.Dist.LEXIS 32404, *9 (W.D.Mich. 2005); <u>Oliphant v. Simboski</u>, 2005 U.S.Dist.LEXIS 5353, *5-6
(D.Conn. 2005); <u>Lamb v. Javitch, Block & Rathbone, LLP</u>, 2005 U.S.Dist.LEXIS 42785 (S.D.Ohio
2005); <u>Thomson v. Prof'l Foreclosure Corp.</u>, 2000 U.S.Dist.LEXIS 22564, *41-42, 45 (E.D.Wash. 2000).

### 3.    Violations of 15 U.S.C. § 1692g

Among other things, Section 1692g requires that a debt collector, in its initial written communication (or within five days thereafter) state the amount of the debt. 15 U.S.C. § 1692g(a). Defendant violated Section 1692g by failing to accurately state the amount of the debt in its initial written communication. First, Defendant stated the amount of the debt was $278.50 even though, as discussed above, $78.50 of that amount was not expressly authorized by the agreement creating the debt.

Second, because interest would accrue on the debt,[8] the amount of the debt changed daily. Indeed, Exhibit A states, "The amount reflected above is the amount you owe as of the date of this letter. This amount may change due to interest or charges added to the account after the date of this letter." PSMF # 26; Appendix 5. By the time Mr. Acik or the class members received Exhibit A, the amount allegedly owed would be higher than stated in Exhibit A. The Seventh Circuit encountered a similar situation where the debt collector failed to state the amount of the debt where interest would cause changes in the amount. In Miller v. McCalla, 214 F.3d 872 (7th Cir. 2000), the Seventh Circuit stated,

> The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt. The requirement is not satisfied by listing a phone number. It is notorious that trying to get through to an 800 number is often a vexing and protracted undertaking, and anyway, unless the number is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to. ... What they certainly could to was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

Miller, 214 F.3d at 875.  In Miller, the Seventh Circuit chose to craft "safe harbor" language for debt collectors to use in this very situation:

> We hold that the following statement satisfies the debt collector's duty to state the amount of the debt in cases like this were the amount varies from day to day: "As of the date of this letter, you owe $__ [the exact amount due]. Because of interest, late charges,

---

[8]    See infra at p. 9, fn 4; PSMF # 40; Appendix 7 ("ACC INT AMT" showing $11.30 in accrued interest as of February 20, 2007).

> and other charges that may vary from day to day, the amount due
> on the day you pay may be greater. Hence, if you pay the amount
> shown above, an adjustment may be necessary after we receive
> your check, in which event we will inform you before depositing
> the check for collection. For further information write the
> undersigned or call 1-800-[phone number]." A debt collector who
> uses this form will not violate the "amount of the debt" provision,
> provided, of course, that the information he furnishes is accurate
> and he does not obscure it by adding confusing other information
> (or misinformation). [citations omitted]. Of course we do not hold
> that a debt collector *must* use this form of words to avoid violating
> the statute; but if he does, and (to repeat an essential qualification)
> does not add other words that confuse the message, he will as a
> matter of law have discharged his duty to state clearly the amount
> due. No reasonable person could conclude that the statement that
> we have drafted does not inform the debtor of the amount due.

Id. at 876. If debt collectors depart from the Seventh Circuit's "safe harbor" language, "they do

so at their risk." Bartlett v. Heibl, 128 F.3d 497, 502 (7th Cir. 1997).

Miller makes clear that when the amount of the debt may change due to interest or other

charges, the Seventh Circuit requires a debt collector to advise the consumer that 1) the amount

stated is only as of the date of the letter; 2) the amount of the debt may change; 3) paying the

amount stated in the letter may require an adjustment; 4) if an adjustment is necessary the debt

collector will inform the consumer before depositing the check; and 5) the consumer may write

or call the debt collector for further information.

In this case, Defendant ignored the Seventh Circuit's unequivocal direction and, instead,

chose to take a short cut. Indeed, Defendant conveyed only that 1) the amount stated was as of

the date of the letter; and 2) that the amount may change. Defendant failed to inform Mr. Acik

and the class members that 3) if they paid the amount stated in the letter it may require an

adjustment; 4) that Defendant would inform them before depositing the check if such an

adjustment were necessary, and 5) that they may write or call Defendant for further information.

PSMF # 34-36; Appendix 1, ¶ 19-20; Appendix 4, p. 4, ¶ 10. Defendant may argue that it did

inform Mr. Acik and the class members that they may write or call Defendant for further

information; however, Defendant did so only in Spanish. Indeed, Exhibit A contains, just above

the tear-off portion, "Si ud tiene alguna pregunta acerca de esta cuenta llame 800/279-9420 y

referir al numero de su cuenta." PSMF # 47; <u>Appendix 5</u>.[9] Nowhere in <u>Exhibit A</u> did Defendant inform Mr. Acik and the class members in English that because of the varying amount of the debt, they could write or call Defendant for further information.

By ignoring another clear instruction by the Seventh Circuit, Defendant has continued its apparent desire to prevent the fair flow of information to the consumer. By refusing to inform the consumer of 3), 4) and 5) above, Defendant withheld information necessary to accurately communicate the amount of the debt to the consumer.

By failing to accurately communicate the amount of the debt to Mr. Acik and the class members, Defendant violated Section 1692g(a)(1).

## V. <u>CONCLUSION</u>

Defendant's violations result from their intentional use of deception, false statements, false representations, unfair means, unconscionable means, and their attempt to collect unauthorized amounts. Defendant refuses to comply with 1) the Seventh Circuit's clear instruction regarding communicating the debt clearly; 2) the Seventh Circuit's "safe harbor" language (instead departing from the language to its own peril); and 3) the FDCPA's requirement that the agreement creating the debt must authorize amounts in addition to the principal, instead intentionally blinding itself by relying solely on its contract with the creditor.

Mr. Acik requests that partial summary judgment and declaratory judgment for liability be entered in his favor and against Defendant. Plaintiff reserves the computation of statutory and actual damages until a later date. To that end, after this Court's decision on liability, Plaintiff will file a motion for partial summary judgment as to damages.

|  |  |
|---|---|
| Dated: October 6, 2008 | Respectfully submitted,<br> s/ Craig M. Shapiro<br>Craig M. Shapiro<br>O. Randolph Bragg<br>HORWITZ, HORWITZ & ASSOCIATES<br>25 East Washington St. Suite 900<br>Chicago, Illinois 60602<br>(312) 372-8822; (312) 372-1673 (Facsimile)<br><br>ATTORNEYS FOR PLAINTIFF |

---

[9]     This sentence translates into English as "If you have any question regarding this account, call 800/279-9420 and refer to your account number." PSMF # 48.