**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

| | |
|---|---|
| AHMET ACIK, on behalf of himself and all others similarly situated, | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | **Civil Action No. 07-cv-881** |
| I.C. SYSTEM, INC. | **Judge Gottschall** |
| Defendant. | **Magistrate Judge Keys** |

---

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b)(2), Plaintiff Ahmet Acik files this Memorandum in Opposition to Defendant's Motion for Summary Judgment. In further opposition to Defendant's Motion for Summary Judgment, Mr. Acik adopts his previously-filed Memorandum in Support of his Motion for Partial Summary Judgment, Docket # 50 ("Plaintiff's Memo").

I. **STATEMENT OF FACTS**

Mr. Acik adopts the Statement of Facts presented in Plaintiff's Memo, pp. 1-4, Plaintiff's Statement of Material Facts (Docket # 51), as well as Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Statement of Additional Material Facts (to be filed contemporaneously with this Memorandum).

II. **ARGUMENT**

    A. **Defendant violated the FDCPA.**

        1. **Section 1692e**

As discussed in Plaintiff's Memo at pp. 9-14, Defendant falsely represented the amount and character of the debt in violation of 15 U.S.C. § 1692e. Defendant claims that it "accurately represented the amount as $200 in principal debt and $78.50 in additional client charges" and that "there was no misrepresentation of the amount assigned to ICS." See Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, p. 3 ("Defendant's Memo, p. __"). Here, Defendant's chosen language is, at best, an attempt to dodge, and, at worst, a misrepresentation of, the FDCPA's plain language. Indeed, Defendant limits the FDCPA's requirement to "the amount *assigned to* ICS." (emphasis added). Such a limitation is not contained in the FDCPA. Simply put, debt collectors must not falsely represent the character or amount of the debt. See 15 U.S.C. § 1692e(2)(A).

           a. **Palmer v. I.C. System, Inc., 2005 WL 3001877 (N.D.Cal. 2005)**

"[T]he requisite inquiries under § 1692e and § 1692f are necessarily fact-bound." McMillan v. Collection Professionals, Inc., 455 F.3d 754, 760 (7th Cir. 2006). Defendant claims that Palmer v. I.C. System, Inc., 2005 WL 3001877 (N.D.Cal. 2005) supports its case, even stating, "Plaintiff's same theory against ICS regarding identical letters has already been rejected...." Defendant's Memo, p. 1. This claim borders on frivolous. Indeed, although the letters at issue in Palmer and this case are of the same form, the facts and theories of liability differ significantly. See Palmer v. I.C. System, Inc., Memorandum of Points and Authorities in

1

Support of Plaintiff's Motion for Partial Summary Judgment, attached as Appendix 10 to Plaintiff's Local Rule 56.1(b)(1) Compendium of Documents.[1, 2]

Nevertheless, Palmer only serves to help Mr. Acik. First, I.C. System argued that the plaintiff lacked standing to pursue an FDCPA violation because she did not dispute the debt. The Court in Palmer quoted the exact same language as Defendant has from Bleich v. The Revenue Maximization Group, 233 F.Supp.2d 496, 501 (E.D.N.Y. 2002) and then stated, "Section 1692g(b), however, does not set forth a mandatory procedure as a prerequisite to filing a suit alleging that a debt collector sought to collect an invalid debt. A plaintiff need not dispute a debt in writing for that dispute to be governed by the FDCPA." Palmer, 2005 WL 3001877 at *4-5.[3] See also Gigli v. Palisades Collection, LLC, 2008 WL 3853295, *6 (M.D.Pa. 2008).

With respect to Mr. Acik's argument that Defendant failed to communicate the character

---

[1] Plaintiff's LR 56.1(b)(1) Compendium of Documents contains Appendices 10-17; Plaintiff's previously-filed LR 56.1(a)(1) Compendium contains Appendices 1-9. With the aim of preventing confusion, Plaintiff submits his two Compendiums without overlapping Appendix numbers.

[2] The crux of the plaintiff's argument in Palmer was that I.C. System attempted to collect charges that violated California state law, in violation of the FDCPA. Appendix 10, pp. 9-12. This argument required an analysis of California state law. In this case, the analysis regarding the propriety of collecting additional charges is factually based, focusing solely on the agreement that created Mr. Acik's alleged debt, and whether that agreement expressly authorized the charges. 15 U.S.C. § 1692f(1). The plaintiff in Palmer further argued three theories of liability that are not advanced here by Mr. Acik. First, that I.C. System's collection letters violated California state law. Appendix 10, pp. 12-13. This argument contains no allegations related to the FDCPA. Second, that I.C. System threatened litigation on a time-barred debt. Appendix 10, pp. 13-18. Third, that I.C. System failed to report the plaintiff's debt as disputed. Appendix 10, pp. 18-19. Clearly, Defendant's statement, "Plaintiff's same theory against ICS regarding identical letters has already been rejected", is plainly incorrect, bordering on disingenuous.

[3] The following should also be noted regarding the Bleich Court's language cited by Defendant. First, the Eastern District of New York's emphasis on the verification procedure provided by Section 1692g as a prerequisite to an FDCPA case ignores that Section 1692g(b) *does not require the debt collector to verify the debt*. Indeed, the only requirement imposed on the debt collector is to cease collection attempts. If the debt collector provides verification, then it may continue its attempts. Instead of verifying it, the debt collector may return the debt to the creditor, who may assign it to another debt collector. Or the debt collector may assign the debt to another debt collector. Either way, the process starts all over again and, pursuant to the Court's unsupported mandate, the consumer is left without the availability of an FDCPA lawsuit, but instead must dispute the debt for a second, third, or fourth time with each subsequent debt collector. Second, to the extent that this Court finds Bleich persuasive, the opinion clearly states, "the court holds that where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, *standing alone*, cannot form the basis of a lawsuit..." Bleich, 233 F.Supp.2d at 501 (emphasis added). Here, Plaintiff has alleged several other violations of the FDCPA.

and amount of the debt because it combined the collection fee and interest into the vague category of "additional client charges", Palmer includes dicta that supports Mr. Acik's argument. "ICS did not misrepresent the amount it sought to collect. As set forth above, ICS was assigned the full amount of the debt from [the creditor] CDC. It sought to collect precisely the amount that was assigned to it and accurately represented that amount as $575 in principal debt and $865 in additional client charges." Palmer at *5. At first glance this quote would appear to help Defendant in this case. However, the Declaration of Sue Johnson filed in Palmer on behalf of I.C. System belies that appearance. Ms. Johnson declared that the creditor provided two amounts: 1) a Principal Balance; and 2) "Additional Client Charges". Appendix 11, ¶ 5. Therefore, I.C. System's letter in Palmer included only those two amounts. Appendix 11, ¶ 6.

In this case, Defendant was not merely provided with an amount of "additional client charges"; instead, it was provided with itemized information: $60.00 Collection Charge and $18.50 Interest Charge. See Plaintiff's Statement of Material Facts ("PSMF") # 40, Docket # 51; Appendix 7 ("CLTN CHG"/"INT CHG AT"). Even though it was provided the itemized amounts and it maintained these itemized amounts in its computer system, Defendant chose to withhold this useful and necessary information. Intentionally withholding the nature of the additional charges, *i.e.*, collection fee and interest, results in the debt being communicated such that its true character is impossible to be determined, even by someone "capable of making basic logical deductions and inferences." Fields v. Wilbur, 383 F.3d 562 (7th Cir. 2004).

Later discussion in Palmer regarding the debt collector's reliance on the creditor and its *bona fide* error defense has since been superceded by the Ninth Circuit Reichert--an opinion issued since Palmer that will be discussed later in this brief.

          b.   **Defendant violated Section 1692e several times over**

As discussed in Plaintiff's Memo at pp. 9-14, Defendant violated Section 1692e in no less than five ways. First, it failed to communicate information about the amount of the debt by combining the Collection Fee and Interest Charge together into the illusory category of "additional client charges", refusing to take the zero-cost route of disclosing these charges. Fields, 383 F.3d 562, 565 (7th Cir. 2004). Second, without any explanation, Defendant first claimed that additional charges were due, but later stated that if payment were made online, no additional charges would be due. Third, Defendant attempted to collect two categories of interest,

3

one a flat charge, the other consistently accruing, without disclosing this fact to the consumer, instead implying that it was attempting to collect only accruing interest. Fourth, in violation of Section 1692e(2)(A), the additional charges Defendant attempted to collect were not expressly authorized by agreement creating the debt, nor authorized by law; Defendant falsely represented the amount of the debt. Fifth, in violation of Section 1692e(2)(A), Defendant falsely represented the character of the debt by hiding the true character of its makeup – Collection Fee and Interest Charge – within the all but meaningless category of "additional client charges."

Defendant essentially concedes that it violated Section 1692e, dedicating a mere five sentences to support its claim that it did not, and citing a case wholly irrelevant to the merits of this case. The seriousness of Defendant's apparent lack of interest in committing any time to this argument is only surpassed by its outright refusal to present any plausible argument.

  **2.**  **Section 1692f**

Defendant violated 15 U.S.C. § 1692f by attempting to collect a $60.00 Collection Fee and an $18.50 Interest Fee, both of which were not authorized by the agreement creating the debt, nor permitted by law. Defendant incorrectly claims that the agreement creating the debt expressly provided for collection of interest and *collection costs*.[4] Defendant's Memo, pp. 4-5. Indeed, the agreement provided only for "costs and fees, including any attorney fees..." PSMF # 13; Appendix 3. The agreement does not provide for the Collection Fee Defendant attempted to collect. Without saying so, Defendant apparently believes that the mere inclusion of the word "fee" qualifies as an *express* authorization. Defendant is wrong. As discussed in Plaintiff's Memo at pp. 14-17, for an additional charge to be *expressly* authorized, it must be distinct, explicit, definite, clear, and unmistakable, rather than implied or left to inference. Johnson v. Ashcroft, 286 F.3d 696, 702 (3d Cir. 2002). The agreement creating the debt does not authorize the $60.00 Collection Fee distinctly, explicitly, clearly, nor unmistakably. Indeed, the Collection Fee is not even implied; it is forever left to inference. Moreover, Courts routinely require that the agreement expressly refer to a "collection fee" or "collection cost", neither of which are present in the agreement creating Mr. Acik's alleged debt. See Plaintiff's Memo, p 17, fn 6 & 7.

---

  [4]  Defendant has apparently changed course from its discovery responses in which it identified its contract with the creditor as the sole source of authority to collect the Collection Fee and Interest Charge. See Plaintiff's Memo, p. 16 fn5.

Regarding interest, the agreement expressly authorizes interest, but limits it to the following: "Interest of 1.5% per month, up to 9% annually will be charged after 60 days." PSMF # 12; Appendix 3. The $18.50 Interest on the $200.00 Principal (9.25% after a mere five months, translating into a 22.2% annual interest) is not expressly authorized by the agreement. Defendant's argument to the contrary is, at best, disingenuous, and, at worst, worthy of sanctions.

### 3. Section 1692g(a)(1)

Continuing its questionable strategy of ultra-brevity, Defendant claims, in no more than four sentences, that Defendant accurately communicated the amount of the debt. Defendant's Memo, p. 4. Defendant again claims that the FDCPA includes an unstated prerequisite to filing a lawsuit based on violation of Section 1692g(a)(1). Indeed, Defendant claims that its inclusion of the validation notice affords it "safe harbor" from violations of the FDCPA. Defendant is wrong. Such a rule would require the Court not only to ignore the plain language and intent of the FDCPA, but to write new language into the statute.[5] However, the statute is violated simply by stating an incorrect amount. Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004). Here, Defendant failed to state the amount of the debt accurately in two ways. First, it included charges that it was not authorized to collect. Second, it failed to explain that interest was accruing on the debt, that the consumer's payment may require an adjustment, that Defendant would inform the consumer before depositing the check if such an adjustment were necessary, and that the consumer may write or call Defendant for further information. Miller v. McCalla, 214 F.3d 872, 876 (7th Cir. 2000). Defendant violated 15 U.S.C. § 1692g(a)(1).

### 4. No Extrinsic Evidence is Necessary

As your Honor has stated, "Courts may determine as a matter of law that a collection letter, on its face, violates the FDCPA." Hernandez v. Attention, LLC, 429 F.Supp.2d 912, 915 (N.D.Ill. 2005). "There is no basis for so flat a rule" to require the plaintiff always submit extrinsic evidence demonstrating the propensity of the letter to confuse." Chuway v. Nat'l Action

---

[5] Defendant appears either to ignore or confuse the difference between violating the FDCPA and asserting a defense. Defendant states, "Again, ICS stated the amount of the debt placed with it by its client, and as such there was no misstatement." Defendant's Memo, p. 4. However, because the FDCPA is a strict liability statute (see Plaintiff's Memo, p. 7), Defendant's misstatement of the debt, regardless of why the misstatement was made, violates the FDCPA. Should Defendant wish to claim it is entitled to the *bona fide* error defense, it may do so.

Fin. Servs., 362 F.3d 944, 948 (7th Cir. 2004). See also Avila v. Rubin, 84 F.3d 222, 226-27 (7th Cir. 1996); Reed v. AID Assocs., 2008 U.S.Dist.LEXIS 68894 (S.D.Ind. 2008) (Extrinsic evidence is merely "*one way* to create a triable issue of fact. [citing Seventh Circuit cases]" (emphasis in original)). "If a statement in a collection letter is confusing or unclear on its face, then a triable issue of fact has been established without the need for any additional evidence from the plaintiff." Lucas v. M.R.S. Assocs., 2005 U.S.Dist.LEXIS 42571, *9 (N.D.Ind. 2005). "In a situation such as this where the claim is not that the statement was misleading but rather objectively false, it is unnecessary for the plaintiff to present extrinsic evidence regarding how an unsophisticated debtor may interpret the statement." Seeger v. Aid Assocs., 2007 U.S.Dist.LEXIS 22824, *11 (E.D.Wisc. 2007). However, "this court does not agree that only an outright contradiction can support summary judgment for plaintiff." Kort v. Diversified Collection Servs, 270 F.Supp.2d 1017, 1025 (N.D.Ill. 2003) aff'd 394 F.3d 530 (7th Cir. 2005).

Defendant itself notes why extrinsic evidence is not necessary in this case by quoting the Seventh Circuit in Durkin v. Equifax, 406 F.3d 410, 415 (7th Cir. 2005): "When the letter itself does not *plainly reveal* that it would be confusing..." (emphasis added). The Seven Circuit stated that "*mere speculation* ... is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion." Id. (emphasis added). Therefore, the standard for which extrinsic is necessary is a violation that plainly reveals, without mere speculation, that a collection letter would confuse the unsophisticated consumer.[6]

Here, Defendant's collection letter violates the FDCPA. That it would confuse the unsophisticated consumer is plainly evident and requires no speculation. Indeed, most of the violations are objective misrepresentations; the others have been expressly identified by the Seventh Circuit as FDCPA violations.

First, the Collection Fee and Interest Charge were not expressly authorized by the agreement, nor permitted by law. Defendant's attempt to collect those amounts violated Section 1692f, f(1), e, e(2)(A)(amount of debt), and g(a)(1). These violations are based on objective criteria, *i.e.*, the FDCPA prohibits these misrepresentations, regardless of their affect on the

---

[6] Mr. Acik submits, as Appendix 12, his Declaration regarding Motions for Summary Judgment, in which he describes his confusion in reaction to Defendant's collection letter. PSMF # 2-13; Appendix 2, 11:23-12:8, 40:20-41:4, 43:11-16, 43:18-44:1, 45:8-9.

6

unsophisticated, or even sophisticated, consumer. Toward this point, the Seventh Circuit in Pettit v. Retrieval Maters Creditors Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000), stated, "a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled." Significantly, the Seventh Circuit did not include "misrepresentations" in the list of violations that may require extrinsic evidence. Extrinsic evidence is not required for allegations of false statements. Seeger v. Aid Assocs., 2007 U.S.Dist.LEXIS 22824, *11 (E.D.Wisc. 2007).

     Second, Defendant's failure to itemize the Collection Fee and Interest Charge has already been found to be a violation by the Seventh Circuit in Fields, wherein the Court required the debt to be communicated clearly and fairly, regardless of the source of the additional amounts. Fields, 383 F.3d at 565; Wahl v. Midland Credit Management, Inc., 2008 U.S.Dist.LEXIS 2563, *9 fn2 (N.D.Ill. 2008); Richard v. Oak Tree Group, Inc., 2008 U.S.Dist.LEXIS 10369 (W.D.Mich. 2008); Dougherty v. Wells Fargo Home Loans, Inc., 425 F.Supp.2d 599, 608 (E.D.Pa. 2006); Dowdy v. Solutia Healthcare TAS, Inc., 2006 U.S.Dist.LEXIS 88899, *25 (M.D.Tenn. 2006); Porter v. Fairbanks Capital Corp., 2003 WL 21210115, *5 (N.D.Ill. 2003).;

     Regarding the failure to disclose effectively that interest was accruing, the Seventh Circuit has already ruled that Defendant's conduct violates the FDCPA. Miller, 214 F.3d 872. In Miller, the Seventh Circuit encountered a situation precisely in line with Defendant's letter in this case. Interest was accruing, but the debt collector did not sufficiently inform the unsophisticated consumer, thereby violating Section 1692g(a)(1). The Seventh Circuit fashioned self-insulating "safe harbor" language to include in an initial communication where interest would cause the amount of the debt to change day-to-day. Id. at 876. In this case, however, Defendant departed from the Seventh Circuit's language, refusing to communicate information that the Seventh Circuit clearly believes must be communicated. The Seventh Circuit has stated that those debt collectors who choose to depart from the "safe harbor" language "do so at their risk." Bartlett v. Heibl, 128 F.3d 497, 502 (7th Cir. 1997). See also Plaintiff's Memo, pp. 18-20. Moreover, the Seventh Circuit stated in Chuway, 362 F.3d 944 (cited by Defendant), "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." Id. at 948. If "the debt collector is trying to collect the listed balance plus the interest running on it or other charges, he should use the safe-

7

harbor language of *Miller*." Id. at 949. By failing to inform the unsophisticated consumer of the information required by the Seventh Circuit in Miller, Defendant also failed to clearly state the amount of the debt.

Regarding the violations based on Defendant's failure to inform the unsophisticated consumer that it was attempting to collect two types of interest–one accruing, one a flat charge–this violation is clearly evident on the face of the letter. Durkin, 406 F.3d at 415. Because of the lack of meaningful information in the letter, it is impossible to know (unless you have access to Defendant's computer records) that Defendant was attempting to collect an $18.50 Interest Charge and additional interest accruing from the date of the letter. No consumer, at any level of sophistication, could know that Defendant attempted to collect two types of interest.

### B. Defendant Fails to Satisfy its Burden and is Not Entitled to the *Bona Fide* Error Defense

Section 1692k(c) states,

> Intent. A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

Therefore, a Defendant escapes liability only if it satisfies its burden of showing that 1) the violation was unintentional; 2) the violation resulted from a *bona fide* error; and 3) it maintained procedures reasonably adapted to avoid any such error. Kort v. Diversified Collection Services, Inc., 394 F.3d 530, 537 (7th Cir. 2005). "The Seventh Circuit has held that the bona fide error defense does not apply when a debt collector's actions are in plain contravention of existing case law." Seeger v. AFNI, Inc., 2007 U.S.Dist.LEXIS 40304, *65 (E.D.Wisc. 2007) citing Nielson v. Dickerson, 307 F.3d 623, 641 (7th Cir. 2002).

As a preliminary matter, it must be noted that Defendant seeks to shift the blame for its own conduct to the creditor, stating, "Thus if the additional charges were erroneous, the error was that of Pro Medical billing, not ICS." Defendant's Brief, p. 7. By stating this, Defendant ignores two things: 1) that FDCPA focuses on the debt collector's conduct–not the creditor, Turner v. J.V.D.B., 330 F.3d 991, 995 (7th Cir. 2003); and 2) that the FDCPA is a strict liability statute.

8

Randolph, 368 F.3d at 730. If Defendant wishes to argue the elements of the *bona fide* error defense, it may do so; however, it should refrain from merely attempting to shift the blame.[7]

### 1. Defendant's Violations Were Intentional

Defendant's failure to clearly communicate the character and nature of debt to the unsophisticated consumer was intentional. Indeed, Defendant's 30(b)(6) witness Sue Johnson testified that the inclusion of the single line "additional client charges" in the letter passes Defendant's test and satisfies its procedures. See Plaintiff's Statement of Additional Material Facts ("PSAMF") # 16; Appendix 9, 42:16-25.

Defendant's failure to communicate the amount of the debt because of the accruing interest was also intentional. In Kort (discussed supra), the Seventh Circuit found that

> by carefully following the [Department of Education] form, [DCS, the debt collector] did not intentionally violate the FDCPA. That is, tracking the DOE form word for word satisfactorily shows that DCS did not intend for its notice ... to be false or unfair. Indeed, DCS's adherence to the DOE form shows that DCS intended to provide accurate information taken from the relevant regulatory agency. In this respect, DCS's actions differ little from debt collectors who follow safe-harbor language drafted by this Court.

394 F.3d at 537. Kort is instructive in this case because Defendant failed to follow the safe-harbor language drafted by the Seventh Circuit. By clear analogy to the Seventh Circuit's unequivocal language in Kort, Defendant, by failing to follow the Seventh Circuit, did not "intend[] to provide accurate information taken from the relevant regulatory agency." Here, it ignored the Seventh Circuit's language and, as the Seventh Circuit has already stated, departed from the "safe harbor" language "at their risk." Bartlett, 128 F.3d at 502.

Defendant's attempted collection of the violative Collection Fee and Interest Charge was

---

[7] Plaintiff must also point out that Defendant erroneously claims that one of Plaintiff's arguments is that Defendant violated the FDCPA by *adding* Collection Fee or Interest Charge. Defendant's Brief, pp. 6-7, 8. Plaintiff has consistently maintained that Defendant violated the FDCPA by *attempting to collect* amounts that were not expressly authorized by the agreement creating the debt, nor permitted by law. See 15 U.S.C. § 1692f(1). Defendant then states incorrectly that "Plaintiff's claim is factually in error as the 'additional client charges' ICS sought to collect were added by its client, Pro Medical Billing, before the debt was assigned to ICS for collection." Defendant's Brief, p. 8. However, Plaintiff maintains that Defendant's own records show that the creditor submitted the "additional client charges" in itemized form with a description of each amount (Collection Fee and Interest Charge), but Defendant improperly, and without reason, chose to combine them into the vague and ambiguous category "additional client charges".

9

intentional. Because this involves Defendant's purported "procedures" it will be discussed at length in that section below. Here, to "ensure" that the Collection Fee and Interest Charge were authorized by the agreement creating the debt (required by 15 U.S.C. § 1692f(1)), Defendant included the following four words in its contract with the creditor: "validly due and owing." Defendant's Brief, p. 8. As well, Defendant allowed the creditor to check off a single box claiming merely that they "have contracts on every account". PSAMF # 17; Docket # 58, pp. 12, 14. Nothing requires the creditor to affirm that the Collection Fee, nor the Interest Charge are expressly authorized by the agreement creating the debt, or permitted by law. These lax "procedures" demonstrate that Defendant intended to violate the FDCPA.

Specifically regarding the collection of the Interest Charge, the contract with the creditor stated, "We will continue to accrue interest on your accounts only if you are legally entitled to charge interest and have specified in writing the lawful rate you request us to accrue. We may limit the rate of interest accrued to a rate less than that to which you may believe you are entitled. We may also refuse to accrue any interest if we believe that such accrual would require us to violate any laws." PSAMF# 18; Docket # 58, pp. 13, 15. Defendant unequivocally and affirmatively reserved the right to limit the accrual of interest based on two grounds–if the creditor is not legally entitled and as long as such accrual did not require Defendant to violate any law. Clearly, Defendant could only exercise this right if it somehow checked up on 1) the creditor; 2) the interest it wanted to have collected; and 3) the laws regulating both itself and the creditor regarding interest. Conversely, Defendant intentionally chose not to reserve its right to limit collection of Collection Fees and Interest Charges (flat interest charges requested by the creditor) and attempted to collect whatever the creditor requested. Defendant's active stance on accrual interest speaks to the intentional violation that resulted from its inactive stance on Collection Fees and Interest Charges.[8] Also, as discussed below, Defendant verifies address and demographic information; however, it intentionally does not verify debt information.

---

[8] Defendant misrepresents this procedure regarding interest accrual by claiming it applies to any type of interest. Defendant's Brief, p. 8. Indeed, as was discussed in Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment at p. 9 fn4, Defendant attempted to collect two types of interest (one a flat charge, the other continuously accruing). It was only if the creditor wanted a higher rate of *accruing interest* (not the $18.50 Interest Charge that was part of the "additional client charges") that Defendant would ever question it. Appendix 6, 109:12-114:17.

10

2.    **There Were No *Bona Fide* Errors**

Defendant committed no *bona fide* errors. Defendant failed to use the Seventh Circuit's safe-harbor language and did not even attempt to use its own similar language to convey the information required by the Seventh Circuit. No *bona fide* error there. Defendant's failure to itemize the "additional client charges" into the Collection Fee and Interest Charge that the creditor provided in itemized form complied with its own internal test and procedures, PSAMF # 16; Appendix 9, 42:16-25, and violates a Seventh Circuit opinion. No *bona fide* error there. Defendant claims that it has "procedures" to prevent collecting amounts not owed, in that it requires the creditor to check a box affirming the existence of agreements, but not affirming anything regarding the content of those agreements, *e.g.*, express authorization of the additional amounts. This "procedure" was bound to fail and can not be taken seriously as "procedure." No *bona fide* error there. Defendant chose certain other procedures to avoid collection of violative amounts, *i.e.* interest accrual to which the creditor would not entitled or which would require Defendant to violate any law; however, it chose not to enact a procedure that prevents collection of violative amounts such as the Collection Fee or Interest Charge. No *bona fide* error there either.

3.    **Defendant Did Not Maintain Procedures Reasonably Adapted to Avoid Such Errors**

Defendant's "procedures" are not actual procedures. Its entire defense consists of nothing more than four words and a checked box on the contract with the creditor. The Ninth Circuit has given the most recent, detailed analysis of the *bona fide* error defense. In Reichert v. National Credit Systems, Inc., 531 F.3d 1002, 1006 (9th Cir. 2008), the Ninth Circuit stated, "The defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable." The Ninth Circuit further stated,

> The fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes. The declaration submitted by [NCS, the debt collector] said only that the creditor 'has never previously given NCS incorrect information.' The fact that the creditor had not made errors in calculating amounts due does not speak to the problem here, the addition of the attorney's fee. NCS did not give reason to justify its reliance on the creditor for the erroneous premise that the attorney's fee could properly be added. As a result, NCS failed to carry its burden of establishing that

11

its reliance upon the creditor was reasonable.

Reichert, 531 F.3d at 1007. The Court concluded, stating that when a debt collector reasonably relies on the reported debt, the reliance must be

> on the basis of procedures maintained to avoid mistakes. A debt collector is not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence. To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors, including, but not limited to, errors in calculation and itemization. The latter would include errors in claiming collection expenses of the creditor that could not legitimately be part of the debt owed by the debtor.
>
> If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. Only then is the mistake entitled to be treated as one made in good faith.

Id. (emphasis added).

In this case, Defendant's reliance on the creditor was unreasonable. First, as stated above at p. 10, it was an intentionally blind reliance. Defendant relied on the creditor for the Collection Fee and the Interest Charge but actively reviewed the creditor's requested rate of accruing interest. Second, Defendant had previously flagged the creditor in this case, Pro Medical Billing, for charging excessive interest and collection charges. PSAMF # 1, Appendix 6, 157:13 - 159:9; Appendix 13 ("SENT CLNT MSG - EXCESSIVE INT/COLL CHRGES"); Appendix 14. In Reichert, the debt collector was not permitted to rely on the creditor's positive performance in the past as an indicator that it would provide valid information. Here, an even worse situation, Defendant ignored the creditor's negative performance in the past and, instead, continued to rely unreasonably on it to provide valid information.[9]

Defendant's reliance is even further unreasonable because Defendant verifies other information, but not the Collection Fee or Interest Charge. Indeed, Defendant does a search on

---

[9] Even had Defendant not flagged the creditor in past, it should have been suspicious of the $60.00 collection fee on a $200.00 principal (30%). The Code of Federal Regulations caps the allowable collection fee for a federal loan at 18.5%. 34 C.F.R. § 684.410(b)(27)(i); Padilla v. Payco Gen. Am Credits, Inc., 161 F.Supp.2d 264, 276 fn19 (S.D.N.Y. 2001).

the national change of address (NCOA) database and verifies the address against the consumer's social security number. PSAMF # 19; Appendix 6, 52:16 - 53:1, 69:24-70:4. Defendant verifies this information "to improve our probability of getting the letter into the hands of the right party." PSAMF # 20; Appendix 6, 52:24-53:1, 69:24-70:4. Defendant also will "run [the account] against an outside vendor like Acolaid or Accurint, to try to get new information." PSAMF # 21, Appendix 6, 69:24-70:6. However, Defendant takes no active steps to improve its probability of attempting to collect the right debt amount.

In Jenkins v. Heintz, 124 F.3d 824 (7th Cir. 1997), the Seventh Circuit rejected the plaintiff's request that the debt collector investigate the charge for which recovery is sought; however, it did so only because the debt collector maintained an eight-step, highly detailed review process to ensure accuracy and to review the work from employees to avoid violating the Act. Jenkins, 124 F.3d at 834. Moreover, the debt collector went "so far as to insist that their client verify under oath that each of the charges was true and correct." Id. at 834. Here, Defendant has no eight-step, nor even a slightly detailed, review process. Defendant does not require that its client verify under oath that the charges are true and correct. Defendant skips these available procedures and relies on a mere four words and a checked box in the contract with its client.[10] Clearly, Defendant did not maintain "procedures", if they even may be called that, reasonably adapted to avoid these violations.

Regarding Defendant's failure to communicate the character and nature of the debt by combining the Collection Fee and Interest Charge into the vague category "additional client charges", it does not maintain procedures to avoid combining itemized amounts provided by the creditor. Defendant received the amount of the Collection Fee and Interest Charge. PSMF # 40; Appendix 7; Appendix 6, 154:16-155:20. However, Defendant combines them into the single line-item "additional client charges" contained in the violative letter. Appendix 6, 155:21-156:4. Apparently, the "procedure reasonably adapted to avoid violation" is to maintain those itemized amounts in their internal computer system but hide them from the consumer. Defendant's second 30(b)(6) deponent Sue Johnson testified at length regarding the purported and unwritten

---

[10] Defendant's purported procedure is similar to the procedure rejected by the Honorable Judge Norgle of this District in Ramirez v. Apex Financial Management, LLC, 567 F.Supp.2d 1035 (N.D.Ill. 2008), in that it is an "indefinite and unpredictable procedure."

procedures regarding itemizing the debt; however, none of her testimony described anything that could have prevented this violation. Appendix 9, 39:19-41:19.

As discussed earlier in this Memorandum, in Palmer Ms. Johnson submitted a Declaration in Support of Summary Judgment relevant to this issue. Appendix 11, ¶ 5. In Palmer, Defendant had no choice but to list the additional client charges as "additional client charges" because the creditor provided no further information. However, in this case, Defendant received the itemized components of the debt, but intentionally combined them into the vague category, "additional client charges," and failed to disclose that it was attempting to collect a Collection Fee and Interest Charge, as well as each amount.

Moreover, in Palmer, Ms. Johnson stated in her Declaration that the consumer did not dispute the debt. Appendix 11, ¶¶ 6, 7, 9, 10. However, in this case Mr. Acik disputed the debt (through counsel) just a week after receiving the violative letter from Defendant. PSAMF # 14; Appendix 15. After taking over two and one-half months to respond to Mr. Acik's request for verification, Defendant verified it, providing information purported to substantiate the debt. PSAMF # 15; Appendix 16. The information provided by Defendant was none other than the agreement creating the debt (Appendix 3), which does not expressly authorize either the Collection Fee or Interest Charge!

Clearly, Defendant's "procedures" do not work–Defendant verified the debt after Mr. Acik disputed it. How can Defendant claim that its procedures work before sending the initial communication if they still do not work after the verification process? Defendant's "procedures" were not reasonably adapted to avoid violation. However, there are very easy examples of what Defendant could have done (even without individually investigating each account): audit a percentage of accounts, impose a penalty on the creditor if it sends invalid accounts, or require the creditor to affirm under oath that all amounts are collectable (like in Jenkins, supra). The only "procedures" it had in place were to include in the contract with the creditor "valid due and owing" and a box to check. Unquestionably, those "procedures" do nothing and are not reasonably adapted to avoid violation of the FDCPA.

    **4.**    **The Case Cited by Defendant Support Plaintiff's Case**

Defendant first cites Hyman v Tate, 362 F.3d 965 (7th Cir. 2004), which states that a debt collector is not required "to independently confirm that the accounts forwarded by the bank were

not in bankruptcy, where the bank, in the first instance, limited the accounts forwarded to those in bankruptcy." Id. at 968. Nevertheless, Defendant ignores the rest of the Hyman opinion, which supports Plaintiff's case. First, the Seventh Circuit noted, "Because forwarding bankrupt accounts was not only a bad business practice but also because Cross Country would immediately notify T & K if an account in bankruptcy slipped through, the district court could reasonably conclude that the bank would not intentionally forward accounts in bankruptcy in the first instance." Id. at 967. In this case, the opposite is true. Indeed, it would be a *good* business practice for the creditor to have a 3rd party attempt to collect unlawful interest and fees–that practice merely translates into more money collected with less risk to the creditor. As well, the creditor believed the unlawful interest and fees were actually lawful, so there would be no reason for the creditor to instruct Defendant not to collect those amounts.

The debt collector's procedures in Hyman also assured "that any accounts mistakenly referred for collection were promptly removed from the collection list." Id. at 968. In this case, there is no indication that Defendant has an across-the-board rule stating that, if it sends a note to the creditor because it believed the interest or collection fee were too high, it would cease its collection attempts of those amounts.

Defendant cannot be insulated by the *bona fide* error defense because it fails to satisfy each prong.

### III.  CONCLUSION

Based on the arguments presented herein, as well as documents submitted herewith and those submitted in support of Plaintiff's Motion for Partial Summary Judgment, Defendant's Motion for Summary Judgment should be denied.

Dated: November 3, 2008

s/ Craig M. Shapiro
Craig M. Shapiro
O. Randolph Bragg
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington St. Suite 900
Chicago, Illinois 60602
(312) 372-8822
(312) 372-1673 (Facsimile)

ATTORNEYS FOR PLAINTIFF