**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AHMET ACIK, on behalf of himself and all others similarly situated, | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | **Civil Action No. 07-cv-881** |
| I.C. SYSTEM, INC. | **Judge Gottschall** |
| Defendant. | **Magistrate Judge Keys** |

**REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Ahmet Acik files this Reply Memorandum in Support of his Motion for Partial Summary Judgment. In further support of his Motion, Plaintiff adopts his Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket # 61).

**I.      Defendant Failed to Communicate the Amount of the Debt Accurately**

The Seventh Circuit has held that a debt collector must "clearly and fairly communicate information about the amount of the debt to debtors." Fields v. Wilbur Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004). Defendant wrongly states that Plaintiff seeks to expand on this Seventh Circuit holding and impose "new duties" on the debt collector.[1]

Here, Plaintiff merely implores this Court to follow the Seventh Circuit in Fields. The Seventh Circuit stated that where additional amounts are added to the principal--the Court did not specifically distinguish between those added by the creditor or debt collector, as Defendant would have this Court believe--the "unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely." Id. at 566. Therefore, the debt collector must clearly and fairly communicate information regarding the character of the debt to the unsophisticated consumer. By not doing so, the debt collector unfairly "hide[s] the true character of the debt, thereby impairing [the consumer's] ability to knowledgeably assess the validity of the debt." Id. The Court stated unequivocally, "One simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt." Id. (emphasis added). In this case, Defendant chose not to follow the Seventh Circuit's suggested compliance, but instead chose the less informative route of combining the Collection Fee and Interest Charge into the confusing category "Additional Client Charges" without disclosing either the amount of each charge, nor the character of each charge.

The Seventh Circuit rejected the notions that the consumer could reference the underlying agreement with the creditor or could telephone the debt collector. Id. "As we noted above, even if she saved her contract from nearly eight months earlier, the unsophisticated consumer would not understand that Wilber was seeking $250 in attorneys' fees, an amount allowed, but not specified, by the contract." Id. Similarly, in this case, even were the contract available, Defendant

---

[1]      Defendant also repeatedly references the fact that it did not calculate the collection fee or interest charge. However, this fact is absolutely irrelevant. Therefore, Plaintiff views these repeated references as nothing more than an attempt to district this Court from the actual issues before it.

1

prevented the unsophisticated consumer from understanding that the debt included a $60.00 Collection Fee and $18.50 Interest Charge (even though the creditor provided Defendant with this itemized information).

Defendant claims it did not violate the FDCPA because its letter "clearly delineate[s] for the consumer what entity is responsible for the addition of which charges." See Defendant's Opposition, p. 4. Again, Defendant side-steps the issue. While it may be clear to the unsophisticated consumer (though not likely) that the "client" added the charges, Defendant still fails to clearly and fairly communicate information about the debt, i.e., the fact that the debt includes a $60.00 Collection Fee and $18.50 Interest Charge.

Surprisingly, Defendant states that "debt collector's [sic] are entitled to rely on their client's representations regarding the amount of the debt." See Defendant's Opposition, p. 4 (emphasis added). Defendant then admits that it "grouped the collection fee and interest together." Id. In this case, had Defendant truly relied on the creditor's representations (which itemized the various charges), Defendant would have avoided the FDCPA violation. Instead, it took the creditor's information, unilaterally added the two charges together, and unilaterally applied a new label, thereby manipulating (as opposed to relying upon) the creditor's information into a less informative, less understandable, and, clearly, a less fair presentation. Defendant's much easier alternative would have been to include two line items, identifying a $60.00 Collection Fee and $18.50 Interest Charge. If Defendant is really so concerned about identifying the source of the additional amounts, it could have labeled them as "Client's Collection Fee" and "Client's Interest Charge." However, adding the charges together and labeling them as "Additional Client Charges" does not pass Seventh Circuit muster. Fields, 383 F.3d at 566.

Defendant failed to clearly and fairly communicate the information about the debt, as provided by the creditor, thereby violating Section 1692e and e(10).

## II. Defendant's Use of Two "Additional Charges" is Confusing and Deceptive on the Face of the Letter

Here, Defendant demanded payment of "Additional Client Charges" of $78.50, but later stated, "There are no additional charges" if you make your payment online." Defendant chose to include two phrases that are similar, save for one word, where at one point it says you have to pay, and at another point you do not. Defendant claims this is not confusing. Contrary to

2

Defendant's assertion, Plaintiff has not chosen to read out the word "Client" from "Additional Client Charges". See Defendant's Opposition, p. 5. The use of both phrases "Additional Client Charges" and "Additional Charges" (with language stating that the latter may not have to be paid) is made even more confusing because of the difference.

Let there be no mistake–neither "Additional Client Charges" nor "Additional Charges" are explained anywhere in Defendant's letter. First, Defendant states "Additional Client Charges" of $78.50. Then, Defendant states in its letter that there are no additional charges if payment is made online. Plaintiff's Statement of Material Facts # 37, Appendix 5. Absent any explanation of either of these phrases, the unsophisticated consumer cannot know the meaning of either. No objective evidence is needed to demonstrate that, first stating that charges are due, then stating that those charges are not due, is patently confusing to the unsophisticated consumer on the face of the letter. Durkin v. Equifax, 406 F.3d 410, 415 (7th Cir. 2005).

## III.     Defendant Failed to Disclose
## that it was Attempting to Collect Two Categories of Interest

Defendant misreads Plaintiff's argument regarding its failure to disclose that it was attempting to collect two categories of interest. Defendant states, "Plaintiff...cites no case law to support his contention that attempting to collect two types of interest...violates Section 1692e." See Defendant's Opposition, p. 6.[2] To the contrary, Plaintiff does not argue that attempting to collect two categories of interest violates anything. Instead, Plaintiff argues that Defendant's failure to disclose that fact violates Section 1692e and e(10). Indeed, Defendant's letter states that the "amount may change due to interest or charges added to the account after the date of this letter." PSMF # 26, Appendix 1, ¶ 14. Unknown to the unsophisticated consumer, Defendant also attempted to collect an unchanging $18.50 Interest Charge veiled within the "Additional Client Charges". However, nowhere does Defendant disclose that $18.50 of the debt is an Interest Charge, or that additional interest, unrelated to the $18.50 Interest Charge, is accruing. There is nothing wrong with attempting to collect two types of interest. However, if Defendant fails to disclose this fact, clearly deceiving, misleading, and confusing the unsophisticated consumer, its

---

[2]         Defendant also claims it "identified" the interest calculated by its client in the category "additional client charges". See Defendant's Opposition, p. 6. This claim is contrary to Defendant's own letter. Nothing within the "additional client charges" is identified as anything other than just that: "additional client charges." Defendant did not identify any part of it as being or relating to interest.

conduct violates the FDCPA.

**IV.     Defendant Attempted to Collect Amounts not Expressly Authorized
by the Agreement Creating the Debt, Nor Permitted by Law**

Defendant incorrectly states that Plaintiff "ignores the plain language of [sic] contract creating his debt." See Defendant's Opposition, p. 8. Indeed, Plaintiff has instead focused on the plain language, while Defendant seeks to embellish, exaggerate, and rewrite the language of the contract.

**A.     Defendant Admits Violating the FDCPA
With Respect to its Attempt to Collect the $18.50 Interest Charge**

On page 9 of its Opposition, Defendant admits that the $18.50 Interest Charge exceeded the amount permitted by the agreement. However, Defendant confuses its violation of the FDCPA with its available defense pursuant to 15 U.S.C. § 1692k(c), stating that it is "entitled to rely on its clients [sic] assertion as to the validity of the amount." Defendant's erroneous application of the potential defense will be discussed later. However, it is clear that Defendant violated 15 U.S.C. § 1692f(1) by attempting to collect the $18.50 Interest Charge (equal to 22.2% annual interest). Defendant has admitted as much in its Opposition. Defendant's Opposition, p. 9.

**B.     Defendant Violated the FDCPA by Attempting to Collect a Collection Fee**

**1.     The Agreement Does Not Expressly Authorize the Collection Fee**

Nowhere in the agreement did Plaintiff or the class members agree to pay a collection fee, collection charge, or any other cost of collection. The lone reference to "collections" is in the sentence, "A payment plan will eliminate interest charges and collections." Appendix 3. The lone reference to any type of "fee" comes later, where it states that the consumer is responsible for "all costs and fees, including attorney fees...." Appendix 3. Clearly, the two sentences are unrelated and cannot be read to imply a collection fee. Even if they were, an implied collection fee does not satisfy the "expressly authorized" requirement of Section 1692f(1). Indeed, as discussed in Plaintiff's opening memorandum, for an amount to be "expressly authorized", it must be distinctly and explicitly authorized, not implicitly authorized, nor merely left to inference; it must be "definite, clear, explicit, [and] unmistakable." Johnson v. Ashcroft, 286 F.3d 696, 702 (3d Cir. 2002). The contract could have made the consumer responsible for "all costs and fees, including attorney fees and collection fees...." However, it did not. The agreement creating Plaintiff's and

4

the class members' debts does not expressly authorize a collection fee.

Defendant's reliance on <u>Decatur Imagine Center v. Ames</u> is misplaced. In <u>Ames</u>, the applicable agreement stated,

> IN THE EVENT YOUR ACCOUNT IS PAST DUE MORE THAN 120 DAYS
> IT MAY BE TURNED OVER TO A COLLECTION AGENCY. IF THIS DOES
> OCCUR YOU WILL BE RESPONSIBLE FOR ALL FEES INCURRED BY
> PLAINTIFF FOR COLLECTION AND/OR ATTORNEYS."

<u>Ames</u>, 237 Ill.App.3d 959, 960, 608 N.E.2d 1198, 1199 (4th Dist. 1992) (emphasis in original). The language of the <u>Ames</u> agreement paints a clear picture of what may happen and for what the consumer is responsible: *If your account is more than 120 days past due, you may be turned over to a collection agency. If that happens, you are responsible for all collection fees and attorney fees.* The <u>Ames</u> agreement could not be any more clear in expressly authorizing a collection fee.

The agreement in this case is nothing like the <u>Ames</u> agreement. The agreement here merely states that a payment plan will eliminate "collections". Later it states that the consumer is responsible for "all ... fees, including attorney fees..." The agreement draws absolutely no connection between eliminating "collections" and the later responsibility for "all...fees". This agreement contains a perfect example of language that contains no express authorization and, at best, may imply or infer a collection fee.

Because the FDCPA requires the agreement to "expressly authorize" the collection fee, which can only be done distinctly, explicitly, clearly, and unmistakably, Defendant's attempt to collect the $60.00 Collection Fee violates 15 U.S.C. § 1692f(1).

## 2.    Illinois Law Does Not Permit the Collection Fee

The Illinois Statute referenced by Defendant does not permit the $60.00 Collection Fee. The statute clearly states, "If a contingency or hourly arrangement (i) ... and (ii)... <u>then that fee arrangement does not violate this Section unless the fee is unreasonable.</u> 225 ILCS 425/9(29) ("Illinois Statute"). The language Defendant quotes does not permit a collection fee. It does nothing more than provide safe harbor from an alleged violation of the Illinois Statute.

Defendant's citation to <u>Ames</u> does not support Defendant's theory. <u>Ames</u> was decided in 1992 – eight years before the Illinois Statute was amended to include the language Defendant quotes in its Opposition. <u>Ames</u> provides no authority regarding whether the Illinois Statute permits a collection fee. Moreover, just a year ago, Defendant testified that it "[does not] know if

there is statute per se, and I don't -- if there is, I don't recall seeing it." Appendix 9, 28:1-4.[3]
Defendant cites absolutely no authority supporting its argument that the Illinois Statute
affirmatively permits a collection fee.

Nevertheless, even if this Court finds that the Illinois Statute may provide an affirmative
right to the debt collector, it must first ensure that the Statute's two-prong requirement is
satisfied: There must be an agreement between the debt collector and creditor and the fee must be
paid "pursuant to a contract between the debtor and the creditor". Therefore, the Illinois Statute
can only permit a fee if the fee is authorized by the agreement. Since it is clear that the agreement
here does not authorize a collection fee, neither does the Illinois Statute.

### C. Defendant Failed to Include the Amount of the Debt as Required by Section 1692g

Because Defendant attempted to collect amounts that it was not authorized to collect, it
failed to include the actual amount of the debt, as required by 15 U.S.C. § 1692g(a)(1).[4]

Defendant again accuses Plaintiff of seeking to expand the holding of a Seventh Circuit
case, this time Miller v. McCalla, 214 F.3d 872 (7th Cir. 2000). However, again, Plaintiff does
not seek to expand the holding, but merely to apply it here to Defendant's violative collection
techniques. In Miller, the Seventh Circuit laid out specific information that a debt collector
should disclose to a consumer if the amount of the debt changed due to interest accruing. Miller,
214 F.3d at 876. As Defendant correctly points out, the Seventh Circuit does not require the
specific language provided in the Miller opinion. However, the safe harbor language in Miller is
a telling and descriptive pronouncement of what information must be included in a letter for a
debt collector to have "discharged his duty to state clearly the amount due." Id.

Here, in its Opposition at p. 10, Defendant admits that it chose to ignore three of the five
informational disclosures required by the Seventh Circuit in Miller: 1) if the consumer paid the

---

[3]     Defendant has changed course from its discovery responses in which it identified its
contract with the creditor as the sole source of authority to collect the Collection Fee and Interest Charge.
See Plaintiff's opening Memo, p. 16 fn5.

[4]     Without explanation, Defendant claims at p. 10 of its Opposition that the Interest Charge
was expressly authorized by the agreement. However, at p. 9 of its Opposition, it admitted that the $18.50
Interest Charge was "in excess" of the amount authorized by the agreement. Plaintiff is incapable of
venturing a guess as to why Defendant has so dramatically changed its argument within a span of only
three paragraphs.

amount stated in the letter, the payment may need an adjustment; 2) Defendant would inform the consumer before depositing the check if an adjustment were necessary; and 3) the consumer may call Defendant for further information. Defendant included none of these disclosures in its letter.

If the Seventh Circuit had intended that a debt collector need <u>only</u> disclose that 1) the amount of the debt was as of the date of the letter; and 2) the amount of the debt may change, it would not have included the other three disclosures in the safe harbor language. To believe otherwise would require the presumption that the Seventh Circuit chose to expend time toying with superfluous language in its opinions–that it knowingly included unnecessary and meaningless safe harbor language. In <u>Miller</u>, the Seventh Circuit made two unequivocal points in this respect: First, that these disclosures must be made; and Second, that debt collectors are not required to use the Seventh Circuit's specific words to make those disclosures. However, much to Defendant's likely chagrin, the latter does not eliminate the former.

Defendant erroneously claims that Plaintiff "does not articulate how the lack of this information makes the letter confusing or misleading." <u>See</u> Defendant's Opposition, p. 10. Indeed, the Seventh Circuit already wrote the controlling opinion, requiring certain disclosures be made. On this point, Plaintiff relies upon, and refers both this Court and Defendant to, <u>Miller</u>.[5] The Seventh Circuit crafted the safe harbor language to ensure that consumers are informed of the amount due and concluded, "No reasonable person could conclude that the statement that we have drafted does not inform the debtor of the amount due." <u>Miller</u>, 214 F.3d 872, 876.

The Seventh Circuit was clear in its instruction to debt collectors: if the debt may change due to interest or other accruing charges, the debt collector must include these disclosures in whatever form or words it chooses; however, if it chooses to depart from the safe harbor language provided, it does so at its own peril. Here, Defendant chose not only to depart from the Seventh Circuit's safe harbor language, but chose to ignore three of the five disclosures required by the Seventh Circuit.

By failing to follow the Seventh Circuit's clear mandate (to disclose specific information, though not necessarily specific words), Defendant did not state the amount of the debt, as

---

[5] Nevertheless, it should be obvious to Defendant that if a consumer is not presented with the disclosures, the consumer does not know that by the time he or she receives the letter, the balance has already changed and payment of that amount is not sufficient to satisfy the debt.

required by Section 1692g(a)(1).

**V.      Plaintiff's Claims Require No Objective Evidence**

Your Honor has stated, "Courts may determine as a matter of law that a collection letter, on its face, violates the FDCPA." Hernandez v. Attention, LLC, 429 F.Supp.2d 912, 915 (N.D.Ill. 2005). In Pettit v. Retrieval Maters Creditors Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000), the Seventh Circuit stated, "a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled." Unequivocally, the Seventh Circuit did not include "misrepresentations" in the list of violations that may require extrinsic evidence. Extrinsic evidence is not required for allegations of false statements. Seeger v. Aid Assocs., 2007 U.S.Dist.LEXIS 22824, *11 (E.D.Wisc. 2007).

The Honorable Judge Castillo of this District stated, "We agree that if a collection letter is confusing on its face, (for example, where the language of the letter is clearly contradictory or inconsistent), the matter may be decided on summary judgment without additional evidence." McCabe v. Crawford & Co., 272 F.Supp.2d 736, 746 (N.D.Ill. 2003). The Honorable Judge Pallmeyer of this District noted, "where a contradiction or inconsistency is apparent from the face of the letter, summary judgment is appropriate for the plaintiff." Mendez v. M.R.S. Assocs., 2005 U.S. Dist. LEXIS 13705, *10 (N.D.Ill. 2005) citing Bartlett v. Heibl, 128 F.3d 497, 501 (7th Cir. 1997).

The Seventh Circuit has also stated that "there is no basis for so flat a rule" to require the plaintiff always to submit extrinsic evidence demonstrating the propensity of the letter to confuse." Chuway v. Nat'l Action Fin. Servs., 362 F.3d 944, 948 (7th Cir. 2004). See also Avila v. Rubin, 84 F.3d 222, 226-27 (7th Cir. 1996). Another Court within the Seventh Circuit stated that extrinsic evidence is merely "*one way* to create a triable issue of fact. [citing Seventh Circuit cases]." Reed v. AID Assocs., 2008 U.S.Dist.LEXIS 68894 (S.D.Ind. 2008)(emphasis in original). "If a statement in a collection letter is confusing or unclear on its face, then a triable issue of fact has been established without the need for any additional evidence from the plaintiff." Lucas v. M.R.S. Assocs., 2005 U.S.Dist.LEXIS 42571, *9 (N.D.Ind. 2005). "In a situation such as this where the claim is not that the statement was misleading but rather objectively false, it is unnecessary for the plaintiff to present extrinsic evidence regarding how an unsophisticated debtor may interpret the statement." Seeger, 2007 U.S.Dist.LEXIS at *11.

8

However, "this court does not agree that only an outright contradiction can support summary judgment for plaintiff." Kort v. Diversified Collection Servs, 270 F.Supp.2d 1017, 1025 (N.D.Ill. 2003) aff'd 394 F.3d 530 (7th Cir. 2005).

Extrinsic evidence is not necessary in this case because the Defendant's letter plainly reveals that it would be confusing. Durkin, 406 F.3d at 415. The standard for which extrinsic is necessary is a violation that plainly reveals, without mere speculation, that a collection letter would confuse the unsophisticated consumer. Id.

Here, Defendant's collection letter violates the FDCPA. It is plainly evident that it would confuse the unsophisticated consumer; it requires no speculation. Most of the violations are objective misrepresentations; the other have been expressly identified by the Seventh Circuit as FDCPA violations.

First, Defendant's attempt to collect the Collection Fee and Interest Charge violates Section 1692f, f(1), e, e(2)(A)(amount of debt), and g(a)(1) because they were not expressly authorized by the agreement, nor permitted by law. These violations are based on objective criteria, *i.e.*, the FDCPA prohibits these misrepresentations, regardless of their affect on the unsophisticated, or even sophisticated, consumer.

Second, Defendant's failure to itemize the Collection Fee and Interest Charge (information that was furnished by the creditor in itemized form) has already been found to violate the FDCPA in Fields, wherein the Seventh Circuit required the debt to be communicated clearly and fairly, regardless of the source of the additional amounts. Fields, 383 F.3d at 565.

Regarding the failure to effectively disclose that interest was accruing, Defendant ignored three of the five pieces of information that the Seventh Circuit stated must be disclosed (though not in any specific form or language). Miller, 214 F.3d 872. The Seventh Circuit encountered a situation identical to this one where interest was accruing, but the debt collector did not sufficiently inform the unsophisticated consumer, thereby violating Section 1692g(a)(1). The Seventh Circuit fashioned "safe harbor" language to include in an initial communication where interest would cause the amount of the debt to change day-to-day. Id. at 876. However, Defendant refused to communicate information that the Seventh Circuit clearly stated must be communicated. Defendant chose to ignore the Seventh Circuit's warning that those debt collectors who choose to depart from the "safe harbor" language "do so at their risk." Bartlett,

9

128 F.3d at 502. <u>See also</u> Plaintiff's Memo, pp. 18-20.

Additionally, the Seventh Circuit stated in <u>Chuway</u>, 362 F.3d 944, "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." <u>Id.</u> at 948. If "the debt collector is trying to collect the listed balance plus the interest running on it or other charges, he should use the safe-harbor language of *Miller*." <u>Id.</u> at 949. Because it failed to inform the unsophisticated consumer of the information required by the Seventh Circuit in <u>Miller</u>, Defendant failed to clearly state the amount of the debt.

Defendant's violation for failing to inform the unsophisticated consumer that it was attempting to collect two types of interest–one accruing, one a flat charge–is clearly evident on the face of the letter. <u>Durkin</u>, 406 F.3d at 415. Because Defendant refused to include any explanation in its letter, it is impossible to know (unless you have access to Defendant's computer records) that Defendant was attempting to collect an $18.50 Interest Charge and additional interest accruing from the date of the letter. No consumer, at any level of sophistication, nor any attorney, Judge, or even a member of Mensa, could know that Defendant attempted to collect two different types of interest.

Defendant cites <u>Day v. Check Brokerage Corp.</u>, 511 F.Supp.2d 950 (N.D.Ill. 2007) and <u>Hernandez v. Attention</u>, 429 F.Supp.2d 912 (N.D.Ill. 2005), stating that this Court granted summary judgment to defendants where the plaintiffs failed to meet their evidentiary burden. However, in <u>Day</u>, Your Honor granted summary judgment in favor of the plaintiff on each his Section 1692e, e(2)(A), e(5), e(10), and f claims. <u>Day</u>, 511 F.Supp.2d at 955-59. The lone finding in favor of the defendant was on an overshadowing claim under Section 1692g; however, that finding was based solely on the fact that the plaintiff did not submit evidence that he was confused by the form letters or that he was representative of the people who received those letters. <u>Id.</u> at 960. <u>Day</u> does not help Defendant here.

In <u>Hernandez</u>, Your Honor found for the defendant only because the consumer survey proffered by the plaintiff was defective due to lack of a control group. <u>Hernandez</u>, 429 F.Supp.2d at 917-18. <u>Hernandez</u> bears no relation to the instant case because no consumer survey is required in this case.

Defendant's violations are largely objective misrepresentations, which do not require a lack of sophistication to deceive the recipient. These violations are clearly evident from the face

of the letter; therefore, extrinsic evidence is unnecessary for this Court to find liability. Defendant misrepresented the amount and character of the alleged debt many times over, presenting mere snippets (at times not even that much) of the information is required to be disclosed. Finally, Defendant attempted to collect $78.50 over the $200 principal (almost 40% more) that it was not even permitted to collect. Defendant's conduct unequivocally violates the FDCPA.

## VI. __Defendant's *Bona Fide* Error Defense Fails__

Plaintiff addressed Defendant's defense at length in his Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition"), Docket # 61, pp. 8-15. Here, Plaintiff will respond to those specific arguments made in Defendant's Opposition, pp. 13-15.

Defendant's defense fails each of the three required, conjunctive prongs. Defendant committed its violations intentionally, no *bona fide* error was present with any of the violations, and Defendant did not maintain procedures reasonably adapted to avoid these violations.

First, Defendant attempts to hang its hat on the fact that it relied upon the creditor to its own detriment. However, Defendant did not merely rely on the creditor; it intentionally blinded itself to the creditor's questionable veracity, ignoring the creditor's prior attempt to collect exaggerated interest--discovered by Defendant itself. See Plaintiff's Opposition, p. 12; Plaintiff's Statement of Additional Material Facts (Docket # 63) ("PSAMF") # 1, Appendix 6, 157:13 - 159:9; Appendix 13 ("SENT CLNT MSG - EXCESSIVE INT/COLL CHRGES"); Appendix 14.

Second, Defendant cites Hyman v. Tate, 362 F.3d 965 (7th Cir. 2004), which states that a debt collector is not required "to independently confirm that the accounts forwarded by the bank were not in bankruptcy, where the bank, in the first instance, limited the accounts forwarded to those in bankruptcy." Id. at 968. Defendant ignores the fact that Plaintiff has never once argued, nor implied, that a debt collector should be required to independently confirm or verify every single account it receives. Defendant further ignores the rest of the Hyman opinion, which supports Plaintiff's case. The Seventh Circuit noted, "Because forwarding bankrupt accounts was not only a bad business practice but also because Cross Country would immediately notify T & K if an account in bankruptcy slipped through, the district court could reasonably conclude that the bank would not intentionally forward accounts in bankruptcy in the first instance." Id. at 967. In this case, the opposite holds true. Unquestionably, it would be a *good* business practice of the creditor to have a 3rd party attempt to collect unlawful interest and fees–translating into more

11

money collected with less risk to the creditor.[6] As well, the creditor in this case believed the unlawful interest and fees were indeed lawful; therefore, there would be no reason for the creditor even to instruct Defendant not to collect those amounts. Additionally, the debt collector's procedures in Hyman also assured "that any accounts mistakenly referred for collection were promptly removed from the collection list." Id. at 968. In this case, there is no indication that Defendant has an across-the-board rule stating that, if it sends a note to the creditor because it believed the interest or collection fee were too high, it would cease its collection attempts of those amounts. Nor is there any indication that it ceased any collection attempts after suspecting the creditor of requesting exaggerated interest rates, as discussed above.

Third, Defendant claims Plaintiff is seeking to impose vicarious liability on Defendant. Defendant's Opposition, p. 14. Nothing plead, testified, nor briefed by Plaintiff would indicate such a theory. Defendant elaborates on this theory with a correct but irrelevant recitation of the law: Plaintiff cannot sue a creditor under the FDCPA. Defendant attempts to stretch this recitation into another, equally irrelevant recitation of the law: the Court should not impute the debt collector with the creditor's knowledge. Plaintiff has made himself abundantly clear on this point: he has not and does not seek to overturn this theory. Defendant's violative collection efforts are based solely on Defendant's own conduct–not on the conduct of the creditor, nor anyone else–and the finding of liability against Defendant does not require this Court to impute Defendant with the creditor's knowledge.

Fourth, Defendant claims that it has "procedures and policies designed to ensure that it only collects valid debts for its clients." Defendant's Opposition, p. 15.[7] Defendant describes its "overarching policy" regarding its clients' allegedly valid debts. However, conspicuously absent from Defendant's discussion regarding its defense is anything regarding actual "procedures" (as

---

[6]     Defendant's reference to an alleged indemnity agreement between the creditor and Defendant is meaningless. There is absolutely no indication anywhere on the record, be it filed documents, discovery responses, deposition testimony, Affidavit or otherwise, that Defendant has enforced, or intends to enforce, any so-called indemnity agreement between itself and the creditor. Plaintiff questions whether Defendant has ever enforced such an agreement. Defendant has produced no evidence that it has.

[7]     Defendant cites to alleged parts of its Compendium of Documents, but some of the cited Appendices, pages, and paragraphs do not appear to make any sense, nor support the alleged facts Defendant presents in its Opposition.

expressly required by the Section 1692k(c) and Seventh Circuit interpretations thereof). Again–Defendant tacitly admits that it maintains no actual procedures. Defendant's Opposition, p. 15. This admission alone eliminates the availability of the *bona fide* error defense.

Even without the admission, the sole basis for Defendant's defense is the content of its contract with creditors–specifically the fact that it includes the four words "validly due and owing" and that it allows the creditors to check off a single box claiming that they "have contracts on every account." These dozen or so words in the contract cannot be found to be a "procedure" under Section 1692k(c). Indeed, there is no procedure.[8]

Defendant cites Palmer v. I.C. System, Inc., 2005 WL 3001877 (N.D.Cal. 2005) and Massa v. I.C. System, Inc., 2007 WL 2316470 (S.D.Ind. 2007) as examples of two cases where its "procedures" were found to be reasonable. However, these two cases do not support Defendant's defense in this case. Palmer was discussed at length in Plaintiff's Opposition to Defendant's Motion for Summary Judgment at pp. 1-3, including the different "procedures" maintained by Defendant and the information supplied by the creditor in that case.

In Palmer, the Northern District of California found I.C. System to have established the *bona fide* error defense "particularly because plaintiff did not dispute the debt while collection was in progress." 2005 WL 3001877 at *8. "Therefore, and particularly because plaintiff did not contest the amount or validity of the debt owed while collection efforts were ongoing, her claims based on defendant's attempts to collect allegedly unauthorized amounts are dismissed." Id. Similarly, the Massa Court relied on the fact that I.C. System informed Ms. Massa of what she should do if she disputed any portion of the debt. 2007 WL 2316470, *7. Nonetheless, a dispute of the debt is not required. 15 U.S.C. § 1692g(c).

It must first be said that the Palmer Court invented, and the Massa Court implied, a new

---

[8]     Defendant's claimed contractual "procedure" is undermined by the actual procedures it maintains to avoid collecting accrued interest at a rate higher than is allowed. Indeed, the contract with the creditor stated, "We will continue to accrue interest on your accounts only if you are legally entitled to charge interest and have specified in writing the lawful rate you request us to accrue. We may limit the rate of interest accrued to a rate less than that to which you may believe you are entitled. We may also refuse to accrue any interest if we believe that such accrual would require us to violate any laws." PSAMF# 18; Docket # 58, pp. 13, 15. Defendant takes active steps (outside of merely including a few buzz words in the contract) to ensure that it does not attempt to collect violative amounts of interest. These active steps taken by Defendant are procedures. The few words in a contract are not procedures.

prerequisite for FDCPA claims, contrary to Congress' own language in the FDCPA. Indeed, nowhere does the FDCPA require any action on behalf of the consumer as a prerequisite to enforcing his or her rights thereunder. 15 U.S.C. § 1692(c).

Nevertheless, the <u>Massa</u> Courts' focus on the plaintiff's dispute rights and the <u>Palmer</u> Court's focus on the plaintiff's failure to dispute the debt only highlights the failure-prone "procedures" that Defendant allegedly maintains. Indeed, in this case, Defendant first blindly relied on the creditor, ignoring the creditor's past attempts to collect exaggerated interest rates and sent the violative letter. PSAMF # 1, <u>Appendix 6</u>, 157:13 - 159:9; <u>Appendix 13</u>; <u>Appendix 14</u>. Then, Plaintiff exercised his right to dispute the debt. PSAMF # 14; <u>Appendix 15</u>. After taking almost three months to respond to Mr. Acik's request for verification, Defendant verified the debt, providing information purported to substantiate the debt and "additional charges." PSAMF # 15; <u>Appendix 16</u>. The information provided by Defendant was nothing more than the agreement creating the debt (<u>Appendix 3</u>), which expressly authorizes <u>neither</u> the Collection Fee or Interest Charge.

Defendant has no procedures. The little that Defendant does--so it may plausibly claim that it only seeks valid debts--itself fails. Contrary to whatever extent other Courts have found those magic words and check-box in Defendant's contract to constitute "procedures reasonably adapted to avoid" the violation, these are not procedures, they are not anything "maintained" by Defendant, nor are they reasonably adapted to avoid the violations committed by Defendant. This Court must reject the notion that inclusion of a dozen words in a contract eliminates the possibility of liability under the FDCPA.

**VII.**   **Plaintiff Has Not Attempted to Amend his Complaint**

As a preliminary matter, Defendant claims that Plaintiff attempted to amend his Complaint by raising "several new legal theories not previously raised in his Complaint or elsewhere." <u>See</u> Defendant's Opposition, pp. 2-3. Defendant is wrong.

In his opening Memorandum (Docket # 50) at pp. 13-14, under the heading "Sections 1692e and e(10)", Plaintiff argued that Defendant violated the FDCPA by 1) confusing and deceiving the unsophisticated consumer regarding the varying status regarding payment of the "additional charges"; and 2) by failing to communicate and disclose that it was attempting to collect two categories of interest (one flat charge, one accruing). Both of these violations are

14

"false, deceptive, or misleading representations or means in connection with the collection of any debt." Defendant violated 15 U.S.C. §§ 1692e and e(10).

Defendant claims that Plaintiff's Motion "should be denied because at [sic] some of the alleged violations were not pled in plaintiff's complaint; and have not otherwise been raised before the filing of this Motion." See Defendant's Opposition, pp. 2. Defendant appears to be confusing the state and federal pleading requirements. Indeed, whereas Illinois State Courts may require fact-pleading, Federal Courts require notice-pleading.

FRCP 8(a)(2) requires simply "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has stated that to avoid a Rule 12(b)(6) dismissal requires giving "fair notice of the basis for petitioner's claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The Supreme Court demonstrated the fair notice's brevity by quoting an example complaint from the Federal Rules' Forms consisting of twenty-eight words. Id. at 513 n4.

In this case, from the very first docket entry, Plaintiff attached as an Exhibit to his Complaint the entirety of the violative, form collection letter and specifically alleged violations of Sections 1692e and e(10) (among other violations as well). See Plaintiff's Class Action Complaint, Docket # 1, ¶¶ 25, 32(A), 40(A) and Exhibit A. These allegations put Defendant on fair notice that Plaintiff intended to advance theories of liability under Sections 1692e and e(10). Defendant would have this Court require Plaintiff to specifically identify every fact supporting each potential theory of liability, elevating the notice-pleading requirement of the Federal Rules to no less than fact-pleading. Defendant fails in its attempt to side-step its liability by collaterally attacking Plaintiff's arguments. This Court should reject Defendant's argument.

Respectfully submitted,

Dated: November 17, 2008              s/ Craig M. Shapiro
                                      Craig M. Shapiro
                                      O. Randolph Bragg
                                      HORWITZ, HORWITZ & ASSOCIATES
                                      25 East Washington St. Suite 900
                                      Chicago, Illinois 60602
                                      (312) 372-8822
                                      (312) 372-1673 (Facsimile)

                                      ATTORNEYS FOR PLAINTIFF

15