**UNITED STATES DISTRICST COURT
NORTHERN DISTRICST OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AHMET ACIK, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 0881 |
| v. | ) ) | Judge Joan B. Gottschall |
| I.C. SYSTEM, INC., | ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiff Ahmet Acik has filed a class action on behalf of himself and others similarly situated against Defendant I.C. System, Inc. ("ICS"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). A class was certified on June 11, 2008. Both parties filed motions for summary judgment on the issue of liability. For the reasons set forth below, ICS's motion is granted and denied in part. Acik's motion is granted and denied in part.

## I. BACKGROUND[1]

Acik was injured in January, 2006, and received medical treatment for his injuries from Chicagoland Plastic Surgery, Ltd. ("CPS"). Acik signed a "Patient Registration Form" ("Form") when he began receiving the medical care. The Form includes the following statement:

> I understand that all bills are to be paid in full within 45 days of submission to my insurance company. Chicagoland Plastic Surgery, Ltd. does not wait for the settlement of lawsuits. Interest of 1.5% per month, up to 9% annually will be charged after 60 days. A payment plan will eliminate the need for collections. I understand that I am responsible for all costs and fees, including attorney fees, and interest incurred from the date of my initial consultation with any physician at Chicagoland Plastic Surgery, Ltd.

---

[1] The following facts are taken from the parties' Rule 56.1 statements. There are no material facts in dispute.

Acik was charged $200 for the care he received.  The amount went unpaid, and Pro Medical Billing ("PMB"), which provided the billing services for CPS, turned the debt over to ICS.  PMB informed ICS that Acik owed (1) the original debt of $200; (2) a collection fee of $60; and (3) an interest fee of $18.50.  PMB had previously informed ICS that it was to charge an annualized interest rate of 9% while accounts were being collected.

ICS contacted Acik via a letter on June 27, 2006, approximately five months after Acik received services from CPS.  The collection letter stated, in relevant part, the following:

> Dear Ahmet Acik:
> Your delinquent account has been turned over to this collection agency.  The amount reflected above is the amount you owe as of the date of this letter. This amount may change due to interest or charges added to the account after the date of this letter.
> . . . .
> Interest at the rate of 9.00% annually is being added to this delinquent account.
> . . . .
> You may pay online . . . .  There are no additional charges for making your payment online.
> . . . .
> NOTICE
> Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid.  If you notify us in writing within 30 days after receiving this notice that the debt or any portion thereof is disputed, we will obtain verification of the debt (or obtain a copy of a judgment if there is one) and mail you a copy of such judgment or verification.  If you make a written request within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.
> Si ud tiene alguna pregunta acerca de esta cuenta llame 800/279-9420 y referir al numero de su cuenta.[2]
> RE:    Pro Medical Billing
>    . . . .
>    Principal:                                   $200.00
>    Additional Client Charges:           $ 78.50
>    Amount Placed For Collection:     $278.50

---

[2] This phrase is written in Spanish.  An English translation was not provided in the letter, but the phrase translates to English as, "If you have any question regarding this account, call 800/279-9420 and refer to your account number."

BALANCE DUE:                                                    $278.50

June 27, 2006 Ltr. from ICS to Acik.  The "Additional Client Charges" amount consisted of a $60

collection fee and $18.50 in interest, though the letter itself did not provide this information; the

letter stated only that $78.50 in "Additional Client Charges" was due.

ICS also maintains procedures which it contends are designed to avoid collecting

unauthorized amounts.  ICS and PMB entered into a contract before ICS began collection work on

PMB's accounts.  The one page contract contains a paragraph titled "You are responsible for

providing accurate & up-to-date account information."  In this paragraph the client, PMB, is directed

to "[p]lace only amounts over $25 that are validly due and owing by the debtor indicated."  The

contract goes on to state that if the information provided is inaccurate, PMB will indemnify ICS for

resulting costs incurred by ICS.  The contract also asks for the annual percentage of interest that

PMB "request[s] and authorize[s] [ICS] to accrue on all [of PMB's] accounts"; PMB answered

"9%."  The next line asks, "Will you have contracts on every account?", followed by two boxes

labeled "Yes" and "No."  PMB selected the "Yes" box.  Finally, ICS maintains a computer program

whose purpose is, *inter alia*, to flag extremely high interest and collection fees as compared to the

principal being collected, and which warns against collection fees if ICS knows that such fees are

prohibited under state law.  If the total amount of fees aside from the principal is more than fifty

percent of the principal, or if it appears to ICS that the interest rate is higher than the maximum

permitted under the creditor's state law, I C. will send an automated message to the creditor alerting

the creditor that there may be a problem, and asking the creditor to investigate.  ICS will not defer

its collection efforts when a notice is sent out unless the creditor asks it to do so.  It is the creditor's

decision whether to do anything after receiving the automated notice from ICS.

## II. ANALYSIS

Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008); *see also Bassiouni v. F.B.I.*, 436 F.3d 712, 721 (7th Cir. 2006) (same for cross-motions).

This action involves the FDCPA. The FDCPA requires an objective analysis. "In deciding whether the collection letters violate the FDCPA, we examine them from the standpoint of an unsophisticated consumer. This assumes that the debtor is uninformed, naive, or trusting. However, an unsophisticated consumer possesses rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004) (citations and quotations omitted).

Courts may determine as a matter of law that a collection letter, on its face, violates the FDCPA. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005) (citation omitted). But "when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Id.* at 415. This is often achieved through consumer survey evidence. *See Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060–61 (7th Cir. 1999); *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1062 (7th Cir. 2000); *Taylor v. Cavalry Inv., LLC*, 365 F.3d

572, 575 (7th Cir. 2004).  In this matter, Acik puts forth no extrinsic evidence and relies solely on what is apparent from the face of the collection letter.

There is no dispute that the FDCPA is applicable; ICS is a "debt collector" and Acik is a "consumer" as defined by the FDCPA.  *See* 15 U.S.C. § 1692a.  Acik alleges that ICS has violated sections 1692e, 1692f, and 1692g.  Damages are provided by section 1692k, which also provides a "due care" exception to liability.  "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  § 1692k(c).  To utilize the "due care" exemption, which ICS pleads in the alternative, ICS must show that the violations were (1) unintentional; (2) bona fide errors, and (3) that procedures reasonably adapted to avoid the errors were maintained by ICS.

**A.** **Section 1692e**

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  § 1692e. Specifically prohibited conduct includes (1) the false representation of the character, amount, or legal status of any debt, and (2) the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.  §§ 1692e(2)(a), (10). Acik argues that the collection letter's "Additional Client Charges" fee violates these provisions because it fails to disclose how the $78.50 was incurred; specifically, it fails to disclose that there was a $60 collection fee and an $18.50 interest fee.  ICS responds that although more information could have been provided, it is not necessary for debt collectors to do so.  The letter accurately reflects the principal of the debt and that additional charges of $78.50 were assessed by PMB.

The Seventh Circuit's decision in *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004) is illuminating.  In *Fields*, the plaintiff had incurred a debt of $122.06 at an animal hospital, did not pay the debt, and later received a collection letter which sought an "account balance" of $388.54.  *Id.* at 563.  The collection letter failed to disclose what part of the $388.54 was the original debt, and also failed to disclose what part was for interest, for service charges, and for attorneys' fees.  *Id.*  The letter provided a phone number to call if there were questions about the bill, but the *Fields* court pointed out that providing a phone number does not excuse "incomplete information in a dunning letter."  *Id.* at 566 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000)) (noting notorious difficulty in calling 800 numbers to obtain information about loans)).

The *Fields* court did not criticize the amount of fees being sought; the fees were appropriate. *Id.* at 564–65.  Yet the court concluded that the information provided was insufficient under section 1692e.  The court found that for an unsophisticated consumer, the collection letter "gave a false impression of the character of the debt" both because "[i]t would be difficult for such a consumer to understand how a relatively modest fee for services rendered had tripled in size," and because the unsophisticated consumer "might logically assume that she simply incurred nearly $400 in charges."  *Id.* at 566.  The Seventh Circuit noted that "[o]ne simple way to comply with § 1692e . . . would be to itemize the various charges that comprise the total amount of the debt."  *Id.*; *see also Singer v. Pierce & Assocs. P.C.*, 383 F.3d 596 (7th Cir. 2004) (finding itemization sufficient to avoid liability).

ICS contends that *Fields* is not controlling because here the original principal was delineated separately, minimizing the concern that an unsophisticated consumer would mistakenly believe that the additional fees were part of the original charges assessed.  *Fields* also did not require itemization,

but merely provided that itemization was but one way a debt collector could be assured of avoiding liability under section 1692e. These points are both accurate. But because ICS declined to take the safe route suggested by *Fields*, the question remains whether ICS's "Additional Client Charges" amalgamation provides sufficient notice.

The collection letter in *Fields* was more opaque than the letter received by Acik since the *Fields* letter contained no itemization whatsoever. However, Acik's letter would leave even a sophisticated consumer guessing as to what the "Additional Client Charges" label represented. The term "Client" is undefined in the letter; ICS maintains that the term "Client" obviously refers to PMB, but it could just as easily refer to Acik since he was a client of CPS when he received the medical services. Even if one were to infer that the Additional Client Charges were assessed by PMB, a consumer would not know why a bill ballooned by 40% in five months, which was one of the concerns cited in *Fields*. *Id.* at 566 ("It would be difficult for such a consumer to understand how a relatively modest fee for services rendered had tripled in size."). The question under section 1692e is not whether these charges were fair or proper, but whether the fees were "clearly and fairly communicated" so that Acik could ascertain the fees' validity.[3] *Id.* at 565; *see also id.* at 566 ("It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt."). Nor is it sufficient that Acik could possibly infer the reason for the additional costs based on the Form Acik signed when he received the medical services. As *Fields* explained, even if Acik still possessed the Form, the Form did not specify the amount of fees to be charged, leaving Acik without notice as to the amount. *See id.* at 566 ("[E]ven assuming she had saved the original contract that specified she could be charged for

---

[3] As discussed *infra* in section II.B, however, the Additional Client Charges fees were improper.

attorneys' fees[, i]t would be difficult for such a consumer to understand how . . . [the] fee . . . had tripled in size.").

ICS argues that the collection letter is nevertheless proper because debt collectors are entitled to rely upon a client's representation regarding the amount of the debt that is owed, and debt collectors are not obligated to verify the debt amount prior to collection. *See Randolph v. I.M.B.S., Inc.*, 368 F.3d 726, 729 (7th Cir. 2004). *Randolph* is inapposite. *Randolph* discussed whether all knowledge of a creditor (such as, whether the debt was paid or whether the debtor was represented by counsel) would be imputed to the debt collector. *Id.* Whether ICS violated section 1692e is based on adequate notice and disclosure, not whether the amount being collected is properly owed. Furthermore, ICS may not argue that it was unaware what the "Additional Client Charges" represented, for it is undisputed that this information—a $60 collection fee and an $18.50 interest charge—was communicated to ICS by PMB, and it was ICS's decision to amalgamate the two individual fees under the "Additional Client Charges" label. Finally, *Fields* was decided after *Randolph*, and the Seventh Circuit determined in *Fields* that the amount of attorneys' fees being collected was appropriate—the problem was solely with the lack of disclosure to the consumer. *Randolph* is inapplicable to section 1692e.

ICS has violated section 1692e in failing to disclose what the "Additional Client Charges" fee represented. Acik has raised additional possible section 1692e violations, including that the use of the language "Additional Client Charges" is confusing when combined with the statement that there would be no "additional charges" if payment were made online, that ICS failed to adequately disclose different types of interest being collected, and that the amount of the debt was not properly disclosed. The court declines to reach these issues since a violation of section 1692e has already been found.

8

ICS finally argues that any liability should be excused under the due care exception, which requires (1) the violation to be unintentional; (2) the violation to be a bona fide error, and (3) that ICS maintain procedures reasonably adapted to avoid such errors. *See* § 1692k(c). ICS argues that various safeguards assured that no undue amounts would be collected, but even if such procedures were in place (which is discussed in more detail *infra* in section II.B.3), it would not excuse a section 1692e violation. It is undisputed that PMB reported its collection and interest fees separately to ICS. It is undisputed that ICS elected to combine these fees and list them as "Additional Client Charges." ICS cannot satisfy the third requirement, that it maintained procedures reasonably adopted to avoid violations of section 1692e. ICS was given all the necessary information about the amount being collected, but elected how to disclose this information to Acik. ICS's act of combining various charges into one "Additional Client Charges" category made the collection letter less clear, not more clear. The record contains no evidence that procedures were adopted to avoid this confusion. The due care exception is inapplicable.

Acik's motion for summary judgment on section 1692e liability is granted; ICS's motion for summary judgment on section 1692e is denied.

## B.    Section 1692f

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including but not limited to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1). The Form signed by Acik states

> I understand that all bills are to be paid in full within 45 days of submission to my insurance company. Chicagoland Plastic Surgery, Ltd. does not wait for the settlement of lawsuits. Interest of 1.5% per month, up to 9% annually will be charged after 60 days. A payment plan will eliminate the need for collections. I

9

understand that I am responsible for all costs and fees, including attorney fees, and interest incurred from the date of my initial consultation with any physician at Chicagoland Plastic Surgery, Ltd.

Acik contends that neither the $60 collection fee nor the $18.50 fee for interest was expressly authorized by this agreement, and that they are not permitted by law.

1.    Collection Fee

The first question is whether the collection fee is "expressly authorized" by the agreement Acik signed. Neither party points to any cases dealing with the language involved here. Acik points to the definition of "express," which Black's Law Dictionary defines as "[c]lear; definite; explicit; plain. . . . Made known distinctly and explicitly, and not left to inference." *See Johnson v. Ashcroft*, 286 F.3d 696, 702 (3d Cir. 2002) (quoting Black's Law Dictionary 580 (6th ed. 1990)). Webster's Third New International Dictionary provides a similar definition: "directly and distinctly stated or expressed rather than implied or left to inference . . . definite, clear, explicit, unmistakable." *Id.* (quoting Webster's Third New Int'l Dictionary 803 (1993)). Acik contends that a collection fee is not expressly authorized because although the phrase "all costs and fees" appears in the Form, "collection fee" is at best "implied or left to inference."

ICS points to the case of *Decatur Imaging Center v. Ames*, 608 N.E.2d 1198 (Ill. App. Ct. 1992), where that court found that an agreement stating that "if payment was not timely received, the account could be turned over to a collection agency and defendant would 'be responsible for all fees incurred by [the plaintiff company] for collection and/or attorneys'" expressly authorized a collection fee. *Id.* at 1201 (alterations in original). The *Ames* court reasoned that "[t]his provision expressly informed [the debtor] he would have to pay any fees incurred by the [Creditor] in its attempts to obtain payment for services." *Id.* ICS contends that the same is true here; ICS reads together the two independent sentences in the Form regarding the collections and fees ("A payment

10

plan will eliminate the need for *collections*.  I understand that I am responsible for *all costs and fees*, including attorney fees, and interest incurred from the date of my initial consultation with any physician at Chicagoland Plastic Surgery, Ltd.”), and contends that because one follows the other, the sentence regarding costs and fees is necessarily modifying the term “collections.”

ICS’s textual interpretation is not entirely implausible, but nor is it explicitly provided. *Ames* does not support ICS’s position because the reference to a collection fee in *Ames* was more obvious; the agreement in *Ames* referenced “fees incurred . . . for collection.”  The Form Acik signed is less clear; Acik agreed that he was responsible for “all costs and fees, including attorney fees, and interest incurred from the date of” his initial consultation.  This is a catch-all, open-ended phrase. The phrase could be interpreted to include collection fees since collection fees would be incurred after the initial consultation, but such a conclusion is made by inference only; it is not expressly provided by the Form.  ICS stresses that the preceding sentence refers to “collections,” but that sentence states only that “[a] payment plan will eliminate the need for collections.”  One could infer from this that if there is no payment plan in place and the payment is late, there will be a “need for collections.”  But this is neither explicit nor clear.  Because section 1692f requires an express authorization, this inference is insufficient to authorize the collection fee at issue here.

ICS next argues that the collection fee is permitted by Illinois law, and points to 225 Ill. Comp. Stat. 425/9, part of the Illinois Collection Agency Act.  Section nine permits the Illinois Division of Professional Regulation to sanction and fine debt collectors for

> [c]ollecting or attempting to collect any interest or other charge or fee in excess of the actual debt or claim unless such interest or other charge or fee is expressly authorized by the agreement creating the debt or claim unless expressly authorized by law or unless in a commercial transaction such interest or other charge or fee is expressly authorized in a subsequent agreement.  If a contingency or hourly fee arrangement (i) is established under an agreement between a collection agency and a creditor to collect a debt and (ii) is paid by a debtor pursuant to a contract between the debtor and the creditor, then that fee arrangement does not violate this Section

unless the fee is unreasonable.  The Department shall determine what constitutes a reasonable collection fee.

225 Ill. Comp. Stat. 425/9(a)(29).  It is agreed that ICS is seeking a contingency fee.  Section nine places four requirements on contingency fees.  First, because the collection fee is a "fee in excess of the actual debt," it must be "expressly authorized by the agreement creating the debt."  Second, a contingency arrangement must be established under agreement between ICS and PMB.  Third, the fee must be owed by Acik pursuant to a contract between Acik and PMB.  Fourth, the fee must be reasonable.  As noted above, the collection fee is not expressly authorized in the Form signed by Acik, and therefore is not permitted under section nine.

The collection fee violates section 1692f.

2.     Interest Fee

The Form permits interest of 1.5% per month, up to 9% annually, starting after 60 days.  ICS does not dispute that the $18.50 fee for interest, five months after the original debt was due, is beyond the amount permitted by the Form.[4]  Nor does ICS point to any state law permitting such an interest charge.  The interest fee violates section 1692f.

3.     Due Care Exception

To qualify for the due care exception, ICS must establish that the section 1962f violations (1) were unintentional; (2) were bona fide; and (3) occurred notwithstanding the maintenance of procedures reasonably adapted to avoid the violation.  § 1692k(c).  ICS must prove each element.

---

[4] The $18.50 fee is more than double the amount permitted by the agreement.  The collection letter was sent about five months after the original debt was assessed.  Only $9.14 in interest could be collected at that time, assuming (as stated in the Form) that no interest would be charged for the first two months, and assuming that an interest rate of 1.5% would be charged for the next three months, compounded monthly.

Because the court concludes that ICS has not established the third requirement, the first two need not be considered.

ICS contends that it maintains reasonable procedures, and points to four safeguards.  First, the contract between PMB and ICS required PMB to send for collection "only accounts over $25 that are *validly due and owing* by the debtor . . . ."  Premier Collect Agmt. Between ICS and PMB (Nov. 16, 2005) (emphasis added) (Def.'s L.R. 56.1(A)(1) Compendium of Docs. Apps. 4–5 (Doc. No. 54-2)).  Second, the contract provides that PMB will indemnify ICS for any resulting damages, including attorneys' fees, for "any claim, of any kind made against ICS alleging the account is not owed, the information provided by you was inaccurate or that payments were reported promptly."  *Id.*  Third, PMB stated in the contract that PMB "[w]ill . . . have contracts on every account."  *Id.*  Fourth, ICS points to automated procedures it has developed which will send a notice to PMB if interest rates and collection fees appear to be excessively high, either because they exceed state-law maximums or because the extra fees are more than fifty percent of the original debt amount.

The last two safeguards will be considered first.  Although the contract between PMB and ICS asks if PMB has a contract on each account, no other information about the terms or content of the contract is conveyed; the mere existence of a contract, without any explanation of the terms of the contract, does not address the propriety of the collection fee and interest rate.  Nor do the automated procedures developed by ICS to send notices to its clients address this harm.  The notice asks the ICS client to consider investigating to make sure the amount to be collected is appropriate.  ICS does not follow up on these inquiries to verify the accuracy or stay collections until a response is received from the client.  ICS is flagging certain fees, but then relying upon the client to investigate the validity of the fees and to inform ICS if there is an error.  The system is designed to

flag very large fees, but it is not designed in any way to address invalid fees. These procedures were not designed to avoid the violations that occurred here.

The Seventh Circuit has permitted debt collectors to rely on a creditor's assertion that a debtor is not in bankruptcy proceedings, based in part on the lack of any motivation for a creditor to misrepresent this matter, and on the cost for a debt collector to independently verify the same. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004); *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497 (7th Cir. 2007). As these cases illustrate, the procedures employed by debt collectors need not be foolproof; they must simply be reasonably adapted to avoid the error at issue. § 1692k(c); *Hyman*, 362 F.3d at 968. ICS argues from this line of cases, and on the "validly due and owing" language of the contract, that it should also be found to be exempt since PMB implicitly stated that these debts were validly due and owing. ICS further contends that courts have relied on identical language in finding the due care exception applicable, and cites *Massa v. ICS Sys., Inc.*, No. 1:06-cv-207-JDT-TAB, 2007 WL 2316470, (S.D. Ind. 2007).[5] *Massa* relied on *Hyman* in finding that the "validly due and owing" language was sufficient to warrant the due care exception when ICS had errantly sought a collection fee which the contract with the debtor did not authorize, because the contract required a judgment to be entered before the fee could be collected. *Massa*, 2007 WL 2316470 at *4, 6–7.

---

[5] ICS also cites *Palmer v. I.C. Systems, Inc.*, No. C-04-03237 RMW, 2005 WL 3001877 (N.D. Cal. Nov. 8, 2005). *Palmer* is readily distinguishable, for in *Palmer* there was much more than the "validly due and owing" language that appears here. While in this case the "validly due and owing" clause relates to "accounts" placed for collection, in *Palmer* it also specifically referenced "the principal, any charges added to the principal by the Client and any rate of interest . . ." *Id.* at *2. The client also had to repeat that these amounts must be validly due and owing when the specific amounts were forwarded to ICS for collection; in this case, PMB signed the contract with ICS only once, and there is nothing in the record to suggest that PMB ever certified the validity of the collection amount on an account by account basis.

14

The facts of *Hyman* are unlike the facts here. In *Hyman*, the entire account was potentially unrecoverable because of the debtor's filing for bankruptcy, which meant that no collection letter should have been sent. 362 F.3d at 968. The question in *Hyman* was whether the debt collector maintained procedures reasonably adapted to prevent the attempted collection of debts protected by the bankruptcy process. Here, the question is whether ICS has procedures reasonably adapted to prevent the collection of improper collection and interest fees, which is a subset of the total amount ICS seeks to collect. ICS maintains no such procedures.

Taking the collection fee first, ICS relies on the fact that the contract signed by PMB states that the accounts sent by PMB to ICS are "validly due and owing," and that PMB has agreed to indemnify ICS for claims based on incorrect information. Acik's debt highlights the inadequacy of the general reference to the *account* being validly due and owing. Acik's original balance was validly due and owing; it had not been paid off by Acik, and PMB had never received any notice of, *e.g.*, a bankruptcy proceeding.[6] But the collection fee was not referenced in the Form signed by Acik, and therefore that portion was invalid, as described *supra* in section II.B.1. This procedure of asking whether an account is validly due and owing may prevent some creditors from forwarding for collection fees not explicitly authorized by the contract, but in this situation where the affirmation is general and is not made contemporaneously with the forwarding of the particular account in question to ICS for collection, the procedure is not reasonably adapted to avoid a section 1692f violation. Nor has ICS put forth any evidence that additional procedures, such as specifically asking "Is any collection fee you are requesting us to collect explicitly authorized by an agreement

---

[6] If the issue were that ICS had attempted to collect on a debt that Acik had paid off, or that Acik gave PMB notice of a bankruptcy proceeding, ICS's argument that its reliance on PMB's representation would be much stronger and the holding of *Hyman* more analogous.

with the debtor?", would be so costly or onerous as to be inefficient.  *Cf. Hyman*, 362 F.3d at 968 (noting cost of independently verifying bankruptcies compared to the low frequency of the problem).

The indemnification provision is not a reasonable procedure, either.  This indemnification clause transfers some of the risk of the collection process to PMB, but it is not a safeguard or procedure specifically addressing whether the Form signed by Acik authorized a collection fee.  ICS points to no case law suggesting that the inclusion of an indemnification clause warrants application of the due care exception.

ICS also lacks procedures specific to the interest fee being charged.  ICS actually is charging two categories of interest:  first, the interest fee assessed by PMB for the period before the account was forwarded to ICS, and second, an interest fee that accrues while ICS collects the debt.  Although ICS has limited procedures in place to warn debtors that the fees being collected may be excessive, there are no procedures to ensure that the interest fee forwarded from PMB is actually authorized by the Form signed by Acik.

Finally, ICS points to holdings by the Seventh Circuit that knowledge of the content of creditors' files cannot be imputed to debt collectors.  *See Randolph*, 368 F.3d at 729.  This holding is premised in part on the due care exception of section 1692k(c) and the requirement under section 1692g(a) that a debt collector must inform the debtor that she may ask for the debt to be verified prior to being required to pay the debt.  The Seventh Circuit reasoned that if a court were to impute the creditor's knowledge to the debt collector, then the  due care exception and the verification process "would be pointless" because the debt collector would have been obligated to know that the debt was valid before the verification process, and any inquiry into the due care exception would also be unnecessary.  *Randolph*, 368 F.3d at 729.

*Randolph* does not address the situation at bar.  The question being considered here is whether ICS maintained adequate procedures.  If it had done so, then the logic of *Randolph* and of section 1692k(c) would apply; ICS would be immune, and any information known by PMB would not be imputed to ICS.  *Randolph* did not diminish the requirements of the due care exception, including the requirement that debt collectors maintain procedures reasonably adapted to avoid the errors at issue.  Rather, *Randolph* used the due care exception to support the more general principle that a creditor's knowledge would not be imputed to a debt collector.  Nevertheless, the FDCPA remains "a strict liability statute," *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009), and unless ICS can show that the due care exception applies, it is liable for its violation. *Randolph* did not change this basic premise of the FDCPA.

The due care exception is inapplicable to ICS's section 1692f violations.  Acik's motion for summary judgment on section 1692f liability is granted, and ICS's motion for summary judgment on section 1692f is denied.

**C.**     **Section 1692g**

Section 1692g provides that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—(1) the amount of the debt . . . .

15 U.S.C. § 1692g(a)(1).  Acik contends that the collection letter does not accurately state the amount of the debt because the information provided is incomplete.  As the letter states, "The amount reflected above is the amount you owe as of the date of this letter.  This amount may change due to interest or charges added to the account after the date of this letter."  June 27, 2006 Ltr. from ICS to Acik.  Acik contends that this is insufficient to state "the amount of the debt," as required by section 1692g.

Acik relies on the Seventh Circuit's decision in *Miller v. McCalla, Raymer, Padrick, Cobb,*
*Nichols, and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000). *Miller* involved a collection letter that
lacked some of the detail found in Acik's letter, such as a statement of the actual balance due as of
the date of the letter.  In *Miller*,

> The dunning letter said that the "unpaid *principal* balance" of the loan (emphasis
> added) was $178,844.65, but added that "this amount does not include accrued but
> unpaid interest, unpaid late charges, escrow advances or other charges for
> preservation and protection of the lender's interest in the property, as authorized by
> your loan agreement.  The amount to reinstate or pay off your loan changes daily.
> You may call our office for complete reinstatement and payoff figures."  An 800
> number is given.

*Id.* at 875.  The Seventh Circuit reasoned that "the Act requires statement of the debt," and "[t]he
unpaid principal balance is not the debt; it is only a part of the debt."  *Id.*  The court went on to note
that while it "might be impossible for the defendants to . . . determine what the amount of the debt
might be at some future date if for example the interest rate in the loan agreement was variable,"
"they certainly could . . . state the total amount due—interest and other charges as well as
principal—on the date the collection letter was sent. We think the statute required this."  *Id.*  Then,
the Seventh Circuit provided model safe-harbor language that debt collectors could safely use:

> "As of the date of this letter, you owe $___ [the exact amount due].  Because of
> interest, late charges, and other charges that may vary from day to day, the amount
> due on the day you pay may be greater. Hence, if you pay the amount shown above,
> an adjustment may be necessary after we receive your check, in which event we will
> inform you before depositing the check for collection.  For further information, write
> the undersigned or call 1-800- [phone number]."

*Id.* at 876 (modification markings in original).  Acik maintains that ICS's letter runs afoul of section
1692g because it fails to (1) reference the possible need for an adjustment; (2) state that ICS would
inform Acik of a need for an adjustment before depositing his check, and (3) state that for further
information as to the debt amount, Acik may contact ICS.  ICS responds that the safe-harbor

language of *Miller* is advisory only, and that ICS must merely comply with the statutory requirements, which it did here.

ICS did the bare minimum required by the statute.  The letter to Acik "state[d] the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent." *See id.* at 875.  The letter also warned Acik that his balance would change over time.  The letter provided Acik with an 888 number.[7]  Nearly identical language was found sufficient in *Williams v. OSI Educ. Servs, Inc.*, 505 F.3d 675, 677–78 (7th Cir. 2007).  The *Williams* court made clear that the safe-harbor language of *Miller* was optional only, and that the standard to be satisfied is whether the collection letter states "the amount of the debt 'clearly enough that the recipient is likely to understand it.'"  *Id.* at 677 (quoting *Chuway v. Nat'l Action Fin. Servs. Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)).  The letter in *Williams* also included an advisory to "[c]ontact us to find out your exact payout balance," *id.*, which is lacking in Acik's letter, but an unsophisticated consumer who is told that the amount of the debt may be increasing daily would presumably understand the need for updated information.  An objective, unsophisticated consumer "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Id.* at 678 (citations omitted).  Such a person would understand that if the balance changes daily, and if the balance given is "as of" the date of the letter, then it would be necessary to contact the debt collector for the exact payoff amount.  The additional suggestions in *Miller*—including a phone call alerting the debtor to any necessary adjustment before depositing a payment—is not required by the

---

[7] The letter also stated, *in Spanish*, that "[i]If you have any question regarding this account, call 800/279-9420 and refer to your account number."  Although this same phrase does not appear in English, it would be apparent to an unsophisticated consumer that he could call the 888 number appearing at the top of the first page to obtain more information about the account.

text of section 1692g; indeed, this same language was lacking in the *Williams* letter.  Because Acik

has provided no extrinsic evidence to support his argument that the letter is confusing in this respect,

his argument fails.

Acik also argues that because the full $78.50 of the $278.50 was not valid, the amount of the

debt stated on the letter was inaccurate.  This argument is in error.  The "amount of the debt" is the

amount currently sought by the debt collector.  *Barnes v. Advanced Call Center Tech., LLC*, 493

F.3d 838, 839 (7th Cir. 2007).  The purpose of this requirement is to put the consumer on notice as

to the amount being sought by the debt collector so the consumer can pay it, or seek verification if

the amount is disputed.  *See* 15 U.S.C. § 1692g(b) (establishing verification requirements).  Acik

cannot prevail on this argument.

Acik's motion for summary judgment on section 1692g is denied.  ICS's motion for

summary judgment on section 1692g is granted.

### III. CONCLUSION

Acik's motion for summary judgment as to liability on his claims is granted as to sections

1692e and 1692f, and denied as to 1692g.  ICS's motion for summary judgment is denied as to the

claims under sections 1692e and 1692f, and granted as to section 1692g.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:  August 6, 2009